## ARTHUR JORDAN COMPANY *v.* CAYLOR.

[No. 5,486.    Filed December 7, 1905.]

1. WORDS AND PHRASES.—*"Net Profits."*—The "net profits" of a business is what remains after the expenses thereof have been deducted from its receipts.    p. 646.

2. CONTRACTS.—*Construction.—Rules.*—Contracts are construed and enforced by the courts according to (1) the meaning of the parties as indicated by the language used therein, (2) the construction given thereto, in cases of doubt, by the conduct of the parties and (3) the clear and unambiguous provisions thereof, regardless of the conduct of the parties.    p. 647.

3. SAME.—*Construction.—Conduct of Parties.—"Net Profits."*— Where plaintiff contracted to furnish the horses and wagons for carrying on a business, and defendant agreed to pay the cost of "shoeing, feeding and caring for" such horses and repairing such wagons, and the defendant agreed to pay plaintiff for his services and the use of his horses and wagons one-half of the "net profits" of such business, such profits to be determined by deducting all expense and losses in the conduct of such business, the expenses of "shoeing, feeding and caring for" such horses and repairing such wagons were a part of the expenses in the conduct of such business and should be deducted from the receipts in estimating the "net profits," the parties by their acts and conduct having treated such expenses as a part of the expenses of the conduct of such business.    p. 647.

4. APPEAL AND ERROR.—*Rendering Final Judgment.—Master's Findings.*—Where the master's findings cover the whole facts involved and no useful purpose will be subserved by ordering a new trial, the Appellate Court will render final judgment. p. 650.

From Superior Court of Marion County (11,627); *Vinson Carter,* Judge.

Action by Allen Caylor against the Arthur Jordan Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*McBride & Denny,* for appellant.
*Charles Remster* and *Elmer Wetzel,* for appellee.

WILEY, J.—Appellee commenced two actions against appellant, one in the Superior Court of Marion County and the other in the Marion Circuit Court. By agreement of the parties the two causes were consolidated and tried as one in the superior court. After their consolidation appellee filed a fourth paragraph of complaint, as to that branch of the case originating in the circuit court, and a second amended complaint based upon two written contracts. Issues were joined, and by agreement of the parties the cause was submitted to a special commissioner, who heard the evidence and reported his findings to the court. He reported that, if certain items of expense were to be included, appellee would be indebted to appellant in the sum of $543.87, and, if such items were excluded, appellant would be indebted to appellee in the sum of $461.60. The record, after showing that the special commissioner had filed his report, contains the following entry: "This cause having been submitted to the court upon the facts found and reported by Crate D. Bowen, special commissioner appointed by the court on agreement of the parties, and argument being heard, and the court, being advised, finds as follows," etc. The court evidently excluded the items of expenses to which we have referred, and which will more definitely appear later in the opinion, and rendered a judgment for appellee for $451.60. Appellant moved for a new trial upon the ground that the finding of the court was not sustained by sufficient evidence and was contrary to law. The

motion was overruled, and its overruling is the only error assigned.

It is strenuously urged by counsel for appellant that appellee is not entitled to recover, because his complaint proceeds upon the theory that appellant and appellee were partners, while it clearly appears from the record that no partnership existed. Upon this question it is only necessary to say that if appellee proceeded upon the theory of a partnership existing between appellant and himself—and as to this we express no opinion—it was upon that branch of the case originating in the circuit court. As to all matters embraced in that branch of the case, the question of partnership is eliminated by the findings of the master, by which it appears that all matters in controversy grew out of the two written contracts which were the basis of that branch of the case originating in the superior court.

The second amended complaint, which was filed after the two causes were consolidated, does not proceed upon the theory of a partnership. This will be manifest by a reference to the important parts of the two contracts. The first was executed on the 18th day of December, 1896, in which it is stated that the Arthur Jordan Company was engaged in the manufacture and distribution of artificial ice, and was also the owner of a natural ice plant; that it was also the owner of horses, wagons, tools, etc., used in connection with said business; that, for the purpose of increasing the facilities for the distribution of ice and extending its trade and patronage, it, on said day, assumed the lease of a certain tract of land held by appellee, who transferred it to appellant; that appellee was the owner of certain horses, wagons, harness, tools, etc., as shown by the exhibit attached to the contract. The contract then proceeds as follows: "Now, therefore, said Allen Caylor is hereby employed by said Arthur Jordan Company as manager and superintendent of said city ice business of said company,

upon the following terms and conditions, to wit." It is then provided that on the 1st day of March, 1897, appellee should assume full charge of the city ice business, devoting his entire time, energy and attention thereto; that after said time appellee was to furnish to appellant all horses, wagons and other articles mentioned in exhibit B, attached to the contract, for its use in said city ice business. The contract then proceeds with this clause: "The expenses of shoeing, feeding and caring for said horses, and necessary repairing of said wagons, to be borne by said Arthur Jordan Company so long as said company shall continue to use them in said business." It is then provided that in consideration for the services of appellee and the use of said horses, etc., appellant was to pay appellee an amount equal to one-half of the net profits of the city ice business, which profits were to be determined as follows: All artificial ice was to be charged to the ice account at the rate of $1.50 per ton, and all natural ice was to be charged to said account at the rate of $1 per ton. All expenses and losses pertaining to handling the ice, including rent, insurance on stock and buildings, office expenses, collection expenses and bad accounts, to be deducted from the gross profits. The difference between the actual amount received for the ice and the amount paid for the ice "and expenses above set forth shall constitute the net profits of the business." It was provided, further, that appellant should furnish all money with which to carry on the business, and have charge and control of all the cash and account books and records of the business which should be open to the inspection of appellee. The contract further provided that appellant should reserve the right to use such part of its ice supply as it might require for its produce business and that the remainder of the entire supply should be subject to the demand of the city ice business, etc.

The second agreement, made between the parties on the 1st day of March, 1898, was for the purpose of continuing

the business as agreed upon in the first contract, and in all substantial respects the two contracts are alike. In the second one, however, no mention is made of the lease of ground transferred by appellee to appellant, and no provision is made for appellee to draw from the account $10 a week for his personal expenses. The second contract was to operate for one year. Appellee avers in his complaint that he performed all of the agreements required of him in said two contracts; that appellant has had at all times exclusive control and charge of the books and records of the business; that it has not kept proper books showing the amount and kind of business of said firm, and has wholly refused to make a statement of the business to appellee, although often requested so to do, or to account to him for his share of the profits. It is then averred that appellee does not know, nor has he any means of telling, what have been the profits of said business after deducting the expenses provided by said contracts, and that appellant has charged to the expense account items that should not have been so charged; that he has never had a statement of the business, and has been unable to obtain anything that purported to be a complete statement thereof; that appellant has had exclusive control of the financial part of the business, and all of the business except the disbursement of the ice to customers, and has concealed from appellee the facts concerning said business, and that he has been unable to know or determine the condition thereof. It is then charged that appellee has requested of appellant that he be permitted to examine the books, and to take from said books the copies of said accounts pertaining to the business, but that appellant has refused such request; that there is a large amount of money due appellee by reason of the profits arising out of said business, to wit, $5,000; that appellant has refused to turn any of said sum of money over to him, or in any way to account to him for it, and still retains possession of it without right. The prayer of the complaint is that appel-

lee may have an accounting and judgment against appellant for what may be found due him thereunder.

We have only to consider the rights of the parties as they appear from the two written agreements and the facts upon which the court found for appellee. The rights of the parties under the contract executed December 18, 1896, are fully adjudicated by the findings of the master and the finding and judgment of the court. It is disclosed by the findings of the master that the parties had a final settlement of their business growing out of that contract, in which it was determined and agreed that appellee was indebted to appellant in a large sum for which he executed his note, etc. The trial court also found that such settlement was made, that it still remains in full force, and that appellee is not entitled to an accounting of matters growing out of that contract.

As above stated, the first and second contracts are in all essential respects identical, and the real point of contention here is the construction of certain provisions in the second one.

Appellant was engaged in business other than that of manufacturing, storing and selling ice, and it employed appellee to manage and superintend only that branch of the business which in the contract is designated as the "city ice business." The contract required appellee to furnish, for the use of said business, horses, wagons, etc., described in a schedule, made part of the contract. That clause of the contract requiring appellee to furnish horses, etc., was as follows: *"The expenses of shoeing, feeding and caring for said horses, and necessary repairing of said wagons, to be borne by said Arthur Jordan Company so long as said company shall continue to use them in said business."* (Our italics.) The contract provided that appellee's compensation for his services and the use of his horses, etc., was to be a sum, to be paid by appellant, equal to one-half of the net profits of said city ice business, such profits to

be determined upon the following basis: All artificial ice to be charged to the ice account at the rate of $1.50 per ton, and natural ice at $1 per ton. *"All expenses and losses pertaining to the handling and putting out of the ice, and including rent, collection expenses, and bad accounts shall be deducted from the gross profits."* (Our italics.) · It is then provided that the difference between the actual amount received for the ice and the amount paid for the ice and "expenses as above set forth" shall constitute the net profits of the business.

Those provisions of the contract above indicated by italics must, when correctly construed, determine the rights of the parties. If the last-quoted expression "expenses as above set forth" refers back and includes "the expenses of shoeing, feeding and caring for said horses, and necessary repairing of said wagons," then, under the findings of the master, appellee would be indebted to appellant in the sum of $543.87. If, however, appellant was chargeable with such expenses, independently of its city ice business, then the judgment is substantially correct. The point of the divergent contentions of the parties is, from these observations, plain. Appellant insists that the expression "all expenses and losses pertaining to the putting out of the ice" includes the expense of caring for, feeding and shoeing the horses and repairing the wagons," etc.; while it is the theory of appellee, that the effect of such expression was to separate the caring for and shoeing of the horses, etc., from the other expenses of the business, and to cast that burden, not upon the department of appellant's city ice business, but upon appellant, aside from that business.

These provisions of the contract now under consideration are identical with those of the first contract. As a simple and well-settled proposition, it may be said that the 1.    expression, "net profits" of a business is what remains after all legitimate expenses of the business have been paid. If, therefore, the expense of caring for

and shoeing the horses, and repairing the wagons, etc., which the contract required appellee to furnish in conducting the business, was an incident to and legitimately connected with the business, then it should be taken into account with other expenses in arriving at the net profits, unless by the terms of the contract it appears that it was not so intended by the parties.

The following rules for the construction of contracts are elementary: (1) The primary and fundamental rule for such construction is to ascertain and enforce the meaning of the parties. Bishop, Contracts (2d ed.), §379; 1 Beach, Contracts, §702. (2) Where parties by their actions and conduct give their contracts a construction, they will be held to such construction by the courts. *Roush* v. *Roush* (1900), 154 Ind. 562; *Wilson* v. *Carrico* (1895), 140 Ind. 533, 49 Am. St. 213; *Childers* v. *First Nat. Bank* (1897), 147 Ind. 430; *Frazier* v. *Myers* (1892), 132 Ind. 71; *Toledo, etc., R. Co.* v. *Burgan* (1894), 9 Ind. App. 604. (3) Where the language of a contract is indefinite or ambiguous, courts will adopt that interpretation or construction of the contract which the parties to it have put upon it. *City of Vincennes* v. *Citizens Gas Light Co.* (1892), 132 Ind. 114, 16 L. R. A. 485; *Indianapolis Cabinet Co.* v. *Herrman* (1893), 7 Ind. App. 462. (4) But if the meaning of the contract is clear, the effect will not be controlled by an erroneous construction given to it by the parties. *Gardner* v. *Caylor* (1900), 24 Ind. App. 521.

Guided by these rules and the facts found by the master, the proper construction of this contract should not be difficult. Appellees' horses and wagons were to be used by appellant in its city ice business. If the expense of caring for and shoeing the horses, and repairing the wagons, was incident to the conduct of the business, that provision of the contract is entirely consistent with the subsequent provision that all "expenses and losses pertaining to the handling and putting out of the ice," etc., shall be

deducted from the gross profits, so as to arrive at the net profits of the business. In making the settlement under the first contract, following which appellee executed his note to cover the amount due from him, the parties treated the expense of feeding, shoeing and caring for the horses, and painting and repairing the wagons, as a part of the expenses to be borne by the city ice business, and appellee knew at the time that all such expenses had been included in the statements of the accounts upon which the settlement was based.

It also appears from the master's findings that for several months prior to August 1, 1898, when appellee retired from the business, weekly statements were prepared by the bookkeeper, from the books of the company pertaining to the city ice business, which included the expense of feeding and caring for the horses, and blacksmithing, and painting and repairing the wagons, as well as all other expenses incident to carrying on the business, and that said statements were submitted to and examined by appellee. The master further found that all of the time the parties were operating under the two contracts the expense of feeding, caring for and shoeing the horses, and repairing the wagons, was charged to the account and paid out of the funds of the city ice business, and that it was done with the knowledge of appellee.

The fourth subdivision of the summary of the master's findings is as follows: "If the expense of feeding, shoeing and caring for the horses used in said city ice business, and the necessary repairing of all wagons during the entire period of operation under the contracts * * * is to be treated as an expense incident to said business and properly chargeable to the expense thereof, which your commissioner finds was so done by the parties hereto, then there is due the defendant Arthur Jordan Company from the plaintiff $543.87." The master further found that in December, 1898, appellant and appellee had a tentative

settlement in which it was agreed that after allowing appellee all credits to which he was entitled, he was still indebted to appellant in the sum of $543.87, which appellee then and there agreed to pay, with the understanding that, if the settlement was "not right," appellant was to pay back to him any amount he had overpaid, and if he had not paid enough, he was to pay the residue.

There is no doubt of the construction given to the contracts by the parties. They construed them both by their acts and conduct, and they construed them to mean that the expense of feeding, shoeing and caring for the horses, and painting and repairing the wagons, was an expense incident to the city ice business, and properly chargeable to its account. This construction is a reasonable construction, and is in harmony with the intent of the parties as expressed by their contract. In this regard we do not think the contract is uncertain or ambiguous, and this construction does not infringe any of the rules to which we have referred. The fact that the second contract contains the identical provisions in regard to expenses connected with the business, and the basis of determining the net profits, as did the first, and the additional fact that the parties acted upon and construed the first as above indicated, are worthy of consideration as showing the course of the business, the intention of the parties, and the meaning of the like provisions of the second contract. This being true, but one conclusion is deducible, and that is, the court will adopt the construction of the contract put upon it by the conduct and acts of the parties, and enforce it accordingly. In doing this we do no violence to the contract, but, on the contrary, give it its plain and reasonable meaning. The master found that appellee was charged with $150, which was paid to him to be used in the purchase of horses to be used in the business, that he purchased with it three horses and put them in the business, and that he has never had credit for them; also, that he was entitled to an additional

credit of $49, being the difference between the price for the sale of four horses by appellant and that for which it gave him credit; also that he was entitled to a credit of one-half of $190, being $95, charged to account of profit and loss for depreciation of office fixtures used in the city ice business. And the master found that these credits "should be added to or deducted from the above balances," according as the court finds that appellant is indebted to appellee, or that appellee is indebted to appellant.

Construing the contract as we have, and in harmony with the facts found, appellee is indebted to appellant in the sum of $543.87. The credits to which we have referred aggregate $294. Deducting this, leaves a balance due appellant of $249.87. Considering the character and nature of the action, the fact that this litigation has been pending nearly four years, and that the record contains over 1,100 pages of typewritten matter, and believing that the facts have been fairly and fully found by the master, from which the rights of the parties may be determined, we are of the opinion that no useful purpose would be subserved by ordering a new trial.

Our conclusion is that the judgment should be reversed, and the trial court directed to render a judgment on the findings of the master for $249.87, with interest from the date of the former judgment; and it is so ordered.