TOM REILLY, Appellee, v. C. C. TAFT COMPANY, Appellant.

**CUSTOMS AND USAGES:** Gross Profits. In an action by a servant to recover his compensation in the form of a certain percentage of the net profits, as per contract, evidence is admissible as to the custom which had prevailed in that particular store in former years in computing such profits.

**TRIAL:** Instructions—Correct But Nonexplicit. Correct but nonexplicit instructions are all-sufficient, in the absence of a request for greater elaboration.

**MASTER AND SERVANT:** Compensation—Evidence—Sufficiency. Evidence held to sustain a verdict, in an action for compensation in the form of a contract percentage of the net profits of a business.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

MAY 3, 1921.

ACTION at law to recover an amount alleged to be due the plaintiff for services rendered. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*W. C. Strock,* for appellant.

*Guy A. Miller,* for appellee.

WEAVER, J.—The defendant is the owner of several cigar stores in the city of Des Moines, and, prior to January 1, 1918, plaintiff had been employed in its service at one of these stores. About the date named, plaintiff decided to establish a similar business of his own, and for that purpose secured a lease of a room or building. It is his claim, as alleged in his petition, that, when Mr. Taft, manager of the defendant company, learned of the plaintiff's purpose, he expressed a wish to retain plaintiff in his employment, and, after some negotiation, they entered into an oral agreement, whereby the company would take over the lease which plaintiff had secured, and plaintiff should continue in the company's employment at a wage of $150 per month, plus 25 per cent of the net profits of the so-called Equitable Cigar Store, one of the stores owned and operated by the company. Plaintiff alleges that he continued in the employment of the company under this contract from January 1, 1918, to November 1st of the same year, a period of 10 months, and that, according to his best information and belief, the net profits of the business at the Equitable Cigar Store for that period of time were $10,000, no part of which has been paid or accounted for to him; and he demands verdict and judgment accordingly.

By its answer, the defendant admits its corporate capacity, and that plaintiff was in its service during the period named. It also admits that plaintiff did secure a lease of the property described by him, and that he assigned the lease to the company, but says that, in doing so, he was acting for the defendant, pursuant to a prior agreement for that purpose.

Further answering, it is alleged that, in the spring of the year 1918 (C. C. Taft, president or manager of the company having then recently died), the plaintiff having made some claim to a share of the profits of the Equitable Store, the matter was

taken up between him and the company, and the differences so arising were fully settled and compromised by the parties upon an agreement by which plaintiff was employed to take charge of the company's retail stores for the wage of $50 per week; and that, from the date of such settlement to November 1, 1918, plaintiff continued in the company's service upon the terms so settled and agreed upon.

Other matters are alleged in the pleadings, but they are largely more in the nature of evidence than issuable allegations, and, so far as is necessary to a proper understanding of the case, will be hereinafter more particularly mentioned. The issues joined were tried to a jury, which returned a verdict for plaintiff for $1,370.18. Defendant's motion for a new trial was overruled, and from the judgment entered on the verdict, defendant appeals.

Though other propositions have more or less attention by counsel in the record, appellant's brief makes but four assignments of error, and to these alone we confine our discussion in this opinion.

I. It is said by appellant that the plaintiff pleaded that, at the time the alleged contract was made, both parties knew and understood that, in former years, the gross profits of the business at the Equitable Store had been computed at 30 per cent of the gross sales, and that, plaintiff having relied upon that custom or manner of business, the defendant was estopped now to deny it or insist upon some other method; and error is assigned upon the failure of the trial court to charge the jury on the issue of estoppel. It is true that the court did not submit to the jury the question of estoppel; but, if there was any error in such omission, it appears to us that it is not an error to the defendant's prejudice. The court charged the jury, in substance, that gross profit was the difference between the cost of the goods and the selling price thereof, and that net profit was the amount of the gross profit, diminished by all the items of necessary expenses incidental to the business; or, in other words, that net profit is the sum which is left after paying the legitimate cost and expense of producing such return.

The omission by the trial court to instruct upon the ques-

1. CUSTOMS AND USAGES: gross profits.

tion of estoppel sufficiently indicates its view that the evidence
did not justify its submission to the jury. ˙ To that extent, the
holding was favorable to the defendant, rather than to the
plaintiff. It does not follow that there was any error in allow-
ing the jury to consider the evidence as to the custom which
had prevailed in the conduct of the business of computing the
gross profit at a given per cent of the gross sales. The burden
was upon the plaintiff, of course, to produce some evidence tend-
ing to show the gross profit; and proof that, in conducting the
same business in the same store for a series of preceding years,
such profit had been found to be, or was taken and accepted as,
measuring the gross profit, was evidence having a legitimate
bearing on that question. *Jordan Co. v. Caylor,* 36 Ind. App.
640 (76 N. E. 419). In this connection, we note counsel's state-
ment in argument that the trial court, in its statement of the
case, ''emphasized the fact that the jury was to keep in mind
that plaintiff knew the gross profits had been figured on the
basis of 30 per cent of the gross sales, and that plaintiff relied
on that fact and the manner in which gross profits had been
figured in the past, when he entered into the contract with de-
fendant.'' This is hardly a fair statement of the attitude or
holding of the trial court. The language to which counsel evi-
dently refers is not found in any statement or discussion of the
law by the court, but in the introductory paragraph, where the
court undertakes to state what the plaintiff *claims* in his petition.

II. The second assignment of error is directed against
the court's ruling in admitting evidence of the manner in which
gross profits were usually estimated or ascertained in the Equit-
able Store, and, for the reasons already suggested, we find no
prejudicial error therein.

III. The defendant, as we have seen, pleaded a settlement
or compromise of the claim sued upon, and it is said that the
trial court erroneously failed to instruct the jury thereon. It
is not correct to say that this issue was ignored
by the court. In the first paragraphs of the
charge, the jury was told that defendant alleged
that, if the contract pleaded by plaintiff was, in fact, entered
into, it was superseded and canceled by a subsequent contract
by and between the parties. In a later paragraph, the jury was

2. TRIAL: instruc-
tions: correct but
nonexplicit.

instructed that the right of plaintiff to recover depended on a finding that the contract on which he relied was, in fact, made, and that he did not thereafter cancel it or surrender his rights thereunder by making a new contract with the company. It is true that the court did not speak of the alleged new contract as an "accord and satisfaction," but it does distinctly state the substance of the issue and the manner in which it affects the rights of the parties, if the "new contract" be established. If counsel for defendant wished the court to instruct more particularly or more in detail upon the subject, it was open to him to so request; and, since he failed to do so, we hold the instruction given to be sufficient.

IV. The fourth and last assignment of error is to the effect that the court erred in denying defendant's motion for new trial, because the verdict is not sustained by the evidence, is excessive, and contrary to the instructions given by the court. It is argued that, if the jury had followed the instructions of the court, it should have diminished the gross profits by deducting therefrom all the items of expense charged on the part of the defendant; and that, upon this basis, the finding in plaintiff's favor could not exceed $411.02. It is true that, for the proper charges to be made against the gross profits, the jury was compelled, to a great extent, to rely on the defendant's own showing, a showing which exhibits somewhat remarkable fluctuations, the total alleged charges and expenses increasing with each change. For example, the account first rendered showed a total expense of $7,570.74. Later,. and after this suit was begun, a new and additional list was presented, amounting to $1,635.60; and still later, a third exhibit, by which the net profit was computed at $1,-644.06. It was not within the province of the court to instruct the jury, as a matter of law, that all these numerous items were legitimate expenses, which must be deducted from the gross profits. The court went to the limit of its authority in directing the jury to deduct "all necessary expenses incidental to the conduct of the business" and find "the excess of the receipts over the necessary and legitimate cost and expense of the business." As a matter of fact, the verdict indicates that the jury did allow as expenses practically everything charged by the defend-

3. MASTER AND SERVANT: compensation: evidence: sufficiency.

ant; but they apparently accepted plaintiff's theory of computation of gross profits at 30 per cent of the gross sales, thus producing $14,527.16 net, instead of the defendant's plan of deducting the purchases made during the 10-months period from the gross sales, and deducting therefrom all of the items in the first and second lists of the defendant's charges, thus producing a gross profit of $10,850.40, and a net of $1,644.06. Twenty-five per cent of the net profits, according to the first computation, is $1,330.29, and according to the defendant's plan, is $411.12. Adding interest at 6 per cent to the remainder due the plaintiff under the first computation will produce practically the exact amount of the verdict. If we are permitted to thus speculate upon the action of the jury, it would seem to appear that, in the final analysis, the real dispute hinges on the question whether the evidence is sufficient to sustain the computation of gross profits at 30 per cent of the sales. On that proposition we entertain no doubt. There is ample evidence to support the verdict, and we find no reversible error in the record. The judgment of the district court is—*Affirmed.*

EVANS, C. J., PRESTON and STEVENS, JJ., concur.

DE GRAFF, J., took no part.