## ALFRED ANTHONY v. WHEATONS & WHITFORD.

In general, where there is a completed sale by a purchase from a firm, the retention of the possession of the goods sold, by the vendors, is, as against a subsequent *bona fide* purchaser, without notice, of the same goods from the firm, a badge of fraud; and requires, in a contest for the title to the goods with the prior purchaser, some explanation. If the second purchaser shall have put himself in a better situation than the first, in having the possession delivered to him, he might require this explanation; without this, he leaves the first purchaser with the prior right, and cannot avoid the prior sale.

Where the managing partner of a manufacturing firm sold goods, which, for a long time, had been in the hands of warehousemen, giving to the vendee, at the time of sale, a written order upon the warehousemen for the goods, and notice to them that the goods were no longer the goods of the firm, but of the vendee, the goods are in the possession of the vendee, as between him and a subsequent purchaser of the goods from another partner of the firm, although the first vendee has never presented the written order to the warehousemen, and demanded the goods.

The exclusion of a general partner from the management of the business, and the sale of the goods of such a firm, may be proved by circumstantial, as well as by direct proof; and is inferable from the conduct of the partners,—as that one of them, for a series of years, has exclusively conducted the business of the firm, and the other, without question, has submitted to it. In aid of this, any reason may be proved, existing or expressed by the partners, showing that it was not desirable or desired to be otherwise; as that the partner excluded from the management had little or no interest in the concern, whilst the interest of the managing and senior partner was large. This is especially admissible in corroboration of express testimony, that at the formation of the partnership it was expressly so agreed; and in a case where the rights of a third person are involved in the question, it is not necessary to prove that he was present at any of the transactions or conversations relied upon as proof of such exclusion from management, or *first* to prove, that he had notice of the exclusion at the time he contracted with the excluded partner; but it is sufficient if such proof is submitted during the trial, though it be itself of a circumstantial character.

REPLEVIN for ninety-three bales of printing cloths, claimed by the plaintiff to have been sold to him by Welcome B. Sayles, as one of the copartners of the manufacturing firm of Daniels & Sayles. The defendants pleaded, *non cepit*,—property in themselves, and in one Tyler Daniels, and the plaintiff joined issue.

On the trial before the Chief Justice, with a jury, at the March term, 1863, for the county of Providence, it appeared, that the plaintiff claimed title to the goods replevied under a sale of the same made to him by Welcome B. Sayles, on the 31st day of August, 1861, whilst the same were in the possession of the

defendants ; that the goods came into their possession as the consignees of Daniels & Sayles, by the delivery of Dan. A. Daniels, the managing partner of said firm of Daniels & Sayles, and whilst in their possession were sold by said Dan. A., on the first day of April, 1861, to one Tyler Daniels, and were thereafter held by the defendants, as warehousemen, for him. The evidence principally related to the sale of the goods by Sayles to the plaintiff, and the prior sale of them by Dan. A. to Tyler Daniels, and notice of the same to the defendants. Much of the evidence on the part of the defendants was also directed to the point, that at the time of the alleged purchase from Sayles by the plaintiff, Dan. A. Daniels was the sole selling agent of the firm, from which agency Sayles had been long excluded ; that the latter was indeed but a mere nominal partner, with no real interest in the concern, to which he was greatly indebted, and had, for a long time before, been notoriously engaged in other pursuits, and at the time of the alleged sale, was about to depart, as a Major in the 7th Regiment of Rhode Island Volunteers, to the seat of war, where he was killed at the battle of Fredericksburgh ; that all this was known to the plaintiff, who was his friend and endorser, and that the supposed sale by Sayles to the plaintiff was a mere sham, for the purpose of getting the goods of the firm out of the possession of the managing partner into the hands of Sayles, for his benefit. Many objections were made by the plaintiff to the evidence submitted, which tended to prove these facts ; but as they are fully stated in the opinion of the court, it is unnecessary to do more than to mention them thus generally here. In his summing up and charge to the jury, the Judge who presided at the trial instructed them as follows :—

" The main question in the case is, whether the plaintiff had title to, and the right to the immediate possession of, the print cloths which, on the 31st day of August, 1861, he replevied out of the hands of the defendants, at the time he so replevied them. The plaintiff's title to the goods is derived from a sale of them, which he claims was made to him on that day by Welcome B. Sayles, a member of the manufacturing firm of Daniels & Sayles ; and the *first* question is, had Daniels & Sayles any title or right to them at that time, which either or both of the copartners of

that firm could vest in the plaintiff? for if they had not, then, without canvassing the relative rights of the copartners as between themselves, or between themselves and third persons, to sell these goods or to manage the affairs of the firm, it is plain that the plaintiff could derive no title or right to the possession of the goods, from them, or either of them.

"Now one of the defences is, that on the 1st day of April, 1861, Dan. A. Daniels, whose power to sell the goods of the firm is not disputed, sold the goods in question to Tyler Daniels, of Woonsocket, receiving for them from said Tyler, at the expiration of the term of credit, in cash, and in notes of the firm before retired by said Tyler Daniels, and in his own note for the balance, the stipulated price of the goods, according to the terms of the bargain of sale. If you believe that this sale was made on the 1st day of April, 1861, as sworn to by Gaskill and Dan. A. Daniels, and was carried out, as testified by Daniels and by Newell, there is an end of the case. This title, as prior in point of time, must prevail over the title of the plaintiff; and you must find that the plaintiff did not own and have the right to the possession of these goods, on the 31st day of August, 1861, when he replevied them.

" The *second* defence to the title of the plaintiff, as stated, is, that on the 31st day of August, 1861, Welcome B. Sayles had, to the knowledge of the plaintiff, no power to sell the goods of Daniels & Sayles; the sole right to sell the goods of that firm being confided to Dan. A. Daniels, the senior partner.

" By the general law, each copartner is the agent of the firm, and may act and contract for it in all its business,—such as sales, purchases, &c. Such right may, however, be restricted by agreement between the copartners; and so far as manufacturing companies, consisting of three or more copartners, are concerned, usually, in this part of the country, is thus restricted, so as to constitute one or more of the copartners the sole managing agent or agents of the concern. In such companies, it is obvious that some restriction of the general rule is not only convenient, but may be necessary for the safe and proper management of the business of the firm. The fact of such restriction may be proved, not only by express evidence of the formal agreement of the copartners to it, but may be implied from other facts, and from

the fact that the business of the firm was, at the period of time to which the enquiry relates, exclusively managed by one of the concern, who acted as its sole agent. The evidence of such a restriction in application to the firm of Daniels & Sayles, at and for some time before the alleged purchase of the plaintiff, consists in the testimony of Dan. A. Daniels, and the fact, sworn to by numerous witnesses and not contradicted, that from 1857, when Daniels & Sayles failed, down to the time of the alleged purchase, Dan. A. Daniels was known in this market as the sole manager of the firm of Daniels & Sayles, and alone sold their goods. Such evidence is sufficient, if it satisfies you, to prove, as between him and Daniels, that Sayles had no power to sell the goods of the firm at the time of the plaintiff's purchase.

"To affect the plaintiff, however, not only must the power of Sayles have been restricted in this respect, but the restriction must have been known to the plaintiff at the time of his purchase. Was it thus known? There is no express proof that it was; but such knowledge may be, and usually is to be, inferred from facts that were known, if, indeed, such facts are proved to have been known by the party to be affected by knowledge of the restriction. Thus, you have a right to consider, in this connection, the proof submitted by the defendants, that for some four years or more before the sale to the plaintiff, Sayles had not done any business for the firm in this market, except to buy a single bale of cotton, in 1857, under the special directions of his copartner, Daniels; and that Daniels, since the failure of the firm, in 1857, had notoriously sold all the goods of the firm. The proof, also, relating to the known character of Sayles' employments since that period, as indicative of a high degree of improbability that he could have acted as the agent of the firm,— his known engagement as a field officer of a regiment, about to take the field,—the intimacy of the plaintiff with him, as his friend and endorser, is for your consideration; and canvassing this evidence with the denial on oath by the plaintiff, that he knew of any limitation of Sayles' power to sell the goods of the concern, you will ask yourselves whether the plaintiff did, or did not know of such limitation; or, what is the same thing, did not know such facts as are tantamount to such knowledge, and would

put any business man upon inquiry as to the power of the seller, which, if he did not make, he did not make at his own peril! And further, if you believe from the evidence, that to the knowledge of the plaintiff, Sayles had done no business for the firm since 1857, or attempted to do any, until, just as he was departing to join the army in the field, and that, with notice from Dan. A. Daniels, that these goods had already been sold to Tyler Daniels, he makes this sale to the plaintiff, his endorser, and that, from that time to this, the note, given by the plaintiff to Sayles for this large amount of property, has not been found, you have a right to consider, not only whether the plaintiff did not know that Sayles had no power to sell the goods of the firm, but whether the sale made by Sayles to the plaintiff was not merely colorable, and got up for the purpose of enabling the former to force a settlement with his copartner more favorable to him than a fair settlement of the partnership accounts, as they have been exhibited to you, would warrant. These, however, are matters of fact, and inferences from them, which I submit wholly to you upon the evidence, for your judgment."

The jury having returned a verdict that the property of the goods replevied was not, at the time the same were replevied, in the plaintiff, but was in the defendants and the said Tyler Daniels, as alleged in the two pleas, the plaintiff now moved for a new trial, on the ground of the improper admission of testimony, and errors in law in the instructions of the Judge to the jury. He also moved for a new trial on the ground that the verdict was against the weight of the evidence, for the purposes of which, the Judge reported to the court his minutes of the evidence taken at the trial. This last ground of new trial was not urged at the argument of the motion.

*Van Slyck, with whom was W. H. Potter, for the plaintiff:*

I. The Judge, at the trial, erred in allowing Albert T. Elliott, a witness sworn by the defendants, to testify to private arrangements, conversations and directions, made, had and given, between him and Dan. A. Daniels, one of the firm of Daniels & Sayles, without its being proved that the plaintiff had any knowledge of any such matters, or that Welcome B. Sayles had assented to any such arrangements or directions.

II. That said Judge erred in allowing James A. Daniels and Dan. A. Daniels, witnesses for the defendants, to testify in relation to conversations between themselves, or either of them, and Welcome B. Sayles, in reference to a sale of the goods in question to Tyler Daniels; said plaintiff not being present, and no knowledge of such conversations being brought home to him.

III. Said court also erred in allowing said witnesses to testify in relation to private understandings and agreements between .Daniels & Sayles, and between them, or either of them, and Eddy and Elliott (vide their testimony in reference to management of business); the same not being brought to the knowledge of the plaintiff.

IV. That said court erred in admitting the testimony of James A. Daniels, as to an account between Daniels & Sayles, made by him, James A. Daniels, from the books of Dan. A. Daniels, and in admitting said account.

V. That said court erred in allowing said Dan. A. Daniels to give in evidence a conversation between him and Welcome B. Sayles, in reference to his, Sayles, going away, and his reasons for desiring a continuation of interest in the concern, as reasons why said partnership was not dissolved.

VI. That said court erred in admitting Elijah B. Newell, a witness on the part of the defendants, to testify to what Tyler Daniels told him as to a contract made by said Tyler Daniels and Dan. A. Daniels, as evidence of that contract.

VII. That said court erred in admitting the testimony of Dan. A. Daniels in reference to his, Dan. A. Daniels', taking up a mortgage upon the property of Daniels & Sayles with his individual funds, &c., as also in admitting the decree of foreclosure.

VIII. That said court erred in allowing the defendants to prove the individual acts of Dan. A. Daniels, as limiting the rights and powers of said Sayles, his partner, as a partner in the firm of Daniels & Sayles.

IX. That said court erred in charging the jury, that if they believed that the sale of these goods was made on the first day of April, 1861, as sworn to by Lebbeus Gaskill and Dan. A. Daniels, and confirmed by Mr. Newell, they must find for the defendants. 1. Because there was no proof of change of pos-

session, actual or constructive. 2. Because the proof was, (and was uncontradicted,) that although Dan. A. Daniels gave Tyler Daniels an order for the delivery of said goods, said Tyler Daniels never presented said order to Wheatons & Whitford, nor caused the same to be presented, nor made any demand for said goods, nor is there any proof that he ever authorized any one to demand the possession of the same,—in fact, the proof was, that they were never in any way delivered to said Tyler Daniels. 3. Because, (if there was any proof in the case from which change of possession might be inferred,) the court expressly charged the jury, that if they believed the sale was made, as sworn to by Gaskill and Dan. A. Daniels, there ends this case. Therefore, the jury was directed to find a verdict for the defendants, if they believed their account of what occurred at Woonsocket.

X. The court erred in charging the jury as follows: "Ask yourselves whether the plaintiff did, or did not know, of such limitation," (referring to the limitation of Sayles' power to sell as copartner of the firm of Daniels & Sayles,) "or what is the same thing, did not know such facts as are tantamount to such knowledge, and would put any business man upon enquiry as to the power of the seller, which if he did not make, he did not make at his own peril?"—there being no proof that said plaintiff had any actual knowledge of any such facts, but, on the contrary, the testimony of the plaintiff, uncontradicted, being that he had no such knowledge.

XI. That said court erred in refusing to charge the jury as requested by the counsel for the plaintiff.

XII. That said court erred in charging the jury, as matter of law, that so far as manufacturing companies, consisting of three or more copartners, are concerned, they usually are restricted (in this part of the country) so as to constitute one or more of the copartners the sole managing agents of the concern.

*Bradley, for the defendants :—*

I. The testimony of Elliott, and Daniels, senior and junior, as to the agreement between the copartners, the relations between them, the state of accounts between them, and the transactions in relation to the mortgage, and generally, between them, as bearing upon the question of authority to sell, either in Daniels or Sayles, was clearly admissible.

II. The transactions at the bank in Woonsocket are also clearly admissible, both in regard to the agreement testified to by Gaskill and Daniels, and its execution, as testified to by Newell, the confidential friend of Tyler Daniels and Dan. A. Daniels.

III. The testimony as to the mode in which the business of the firm was conducted, in Providence, and the plaintiff's relations to said business, and towards said Sayles, is clearly admissible, tending to bring home knowledge of the actual authority of Sayles, and of his position in the firm, to the plaintiff.

IV. The instructions upon points of law are unquestionably correct. 1. That partners may, *inter se*, limit their usual authority, and that evidence of such limitation may be brought home to the party dealing with the partner, by circumstantial, as well as by direct, evidence. 2. That a sale of goods, and delivery of a written order therefor, especially with notice of such transaction given to the holder of the goods, deprives the seller of all power to resell the same.

BRAYTON, J. This is an action of replevin, brought to recover ninety-three bales of prints, which the plaintiff claims were sold to him, on the 31st of August, 1861, by the firm of Daniels & Sayles, through Welcome B. Sayles, a partner of that firm. One of the defences set up was, that prior to that time, viz., on the first day of April, 1861, these goods were sold by Dan. A. Daniels, the other partner, and agent of the firm, to one Tyler Daniels. In support of this defence, the defendants offered the said Dan. A. Daniels and Lebbeus J. Gaskill, both of whom testified to the sale on that day, to be paid for at six months, by retiring the notes of the firm, endorsed by Tyler Daniels, for the sum of $3000, and to pay the balance of the stipulated price in cash ; that an order for the goods was drawn upon Wheatons & Whitford, in whose store the goods then were, and delivered to said Tyler Daniels, with a bill of sale of the goods. Said Daniels also swore, that soon after the sale he informed said Wheatons & Whitford that the goods were sold to said Tyler Daniels. Elijah B. Newell, another witness, testified, that Tyler Daniels, on the next day, informed him of the terms of the contract, put into his hands the bill of sale and the order, and requested him

to see the terms of the contract performed on his part, and that he did so perform them. This performance was also sworn to by Dan. A. Daniels. It did not appear that Tyler Daniels ever delivered the order to Wheatons & Whitford, or demanded of them the goods.

Upon this evidence, the Judge charged the jury, that if they believed that the sale of the goods was made on the first day of April, 1861, as sworn to by Lebbeus J. Gaskill and Dan. A. Daniels, and carried out, as testified to by said Daniels and by Elijah B. Newell, there was an end of the plaintiff's case, and they must find that the plaintiff did not own, or have the right of possession of, the goods, at the time he replevied them. This charge is objected to as erroneous, and is made the ground for a new trial; and the objection is, that the facts sworn to by the witnesses referred to are not sufficient to bind the plaintiff.

The objection is not that a contract of sale was not made,— that all its terms were not performed by the vendee,—that anything remained to be done in order to put the goods in a condition for sale, or to identify them, or to distinguish them from others, or, in fact, that it was not a completed sale, upon the making of which, the property passed, as between the vendor and Tyler Daniels the vendee, without a delivery; but the objection is, that the testimony referred to did not show a delivery of possession to said Daniels, which the plaintiff claims to be necessary, in order to avoid a subsequent sale to a *bona fide* purchase without notice, as he claims to be. "In general, where there is a completed sale," says Professor Parsons (1 Parsons on Cont. 442), "the retention of possession by the vendor is a badge of fraud;" requiring, as against a subsequent *bona fide* purchaser without notice, some explanation. If the second purchaser shall have put himself in a better situation than the first, in having the possession delivered to him, he might require this explanation. Without this, he leaves the first vendee with the prior right, and can no more avoid a prior sale completed than he could a subsequent one, and for the same reason.

In this case, however, upon the testimony referred to, the vendor did not remain in possession. The goods were, at the time of sale, in the warehouse of Wheatons & Whitford, where they

Anthony *v.* Wheatons & Whitford.

had been for a long time. A written order for the delivery of the goods was, at the time of the sale, given to the vendee, giving him the power to take them when he chose,—the vendor giving up all control over them. Had the delivery order been presented, and possession demanded by Tyler Daniels, the vendee, no question could have been made that his title was not perfect against all the world. The vendor, however, did more; he gave notice to the depositary that he had sold the goods, and that they were now the property of Tyler Daniels, and not of Daniels & Sayles. More than this he could not well do; nor could more be well required to negative the fact that the vendor remained in possession.

Certain evidence offered under the first defence set up by the defendants was, at the trial, objected-to. That which is stated in the fifth exception is, the evidence of witnesses who swore to the contract of sale by which the title to the goods is claimed to have passed to Tyler Daniels. To rule out such evidence would be to rule out the defence, and clearly that could not be.

The testimony of Elijah B. Newell, as stated in the sixth exception, was objected to as hearsay, so far as he stated the terms of the contract, which he swore he knew only from Tyler Daniels. The witness was not offered to prove the contract of sale. He was desired, as he testified, by Tyler Daniels to act for him, and carry out the terms of the contract made with the firm; and that he might know what his agency was to be, Daniels stated to him what the terms of the contract were. This was not only admissible, but was necessary. It was part of the *res gestæ*, defining the extent of the agency.

The second ground of defence was, that at the time when, as the plaintiff testified, the sale was made to him by Welcome B. Sayles, Sayles had no power to sell the goods of Daniels & Sayles,—the sole right being confided to Dan. A. Daniels, the senior partner of the firm,—and that this want of power in Sayles was known to the plaintiff. This defence required of the defendant to prove, that it was agreed by the members of the firm that Daniels should have the sole power of sale. No question was made at the trial, nor is now made, nor can there be any doubt that such agreement may be implied from circumstances,

as well as proved by express words. It may be implied from the conduct of the partners for a series of years; from the fact that Daniels had exclusively conducted the business of the firm; that Sayles had not assumed to act in the business, but by the special permission of Daniels and under his direction; that at no time did he question Daniels' power, or the extent of it, though necessarily he must know, since the business was done, that it was done by Daniels; and from his silence under such circumstances, that if no such understanding existed, he would be likely to call Daniels' authority in question. It might even be proper to show any reason, existing or expressed by the partners, why it was not desirable or desired that it should be otherwise, as that Sayles had little or no interest in the concern, while the interest of Daniels was large. All this would also be admissible, in corroboration of the testimony of Dan. A. Daniels and James A. Daniels, who swore, that at the formation of the copartnership, it was so expressly agreed. It was not necessary to the admissibility of this evidence, that it should be *first proved* that the plaintiff was present at any of the transactions, or knew of them at the time they transpired, though it would be necessary to prove, before the plaintiff could be affected by it, that he did, before the 31st of July, 1861, know that Sayles had no power. It would be sufficient that this proof was submitted at some time during the trial. Neither was it necessary, in order to prove the exclusive conduct of the business by Daniels, *first* to prove that Sayles had assented. That was to be implied from such exclusive conduct and Sayles' silence, knowing this, and neither acting himself nor objecting to the action of Daniels.

Much of the testimony offered by the defendants, under the second defence, was objected to at the trial, and made the subject of the first, second, third, fourth, seventh and eighth exceptions in the plaintiff's motion for new trial. In the view which we have suggested, we do not perceive how any of the evidence thus objected to could have been properly ruled out. Elliott's testimony, the subject of the first exception, was, that at the commencement of the business Daniels consigned the goods to the witness for sale; that he afterwards allowed Sayles to sell for a time, but withdrew the goods from him when dissatisfied with

his conduct about the sales, and from this time, Daniels only sold the goods. Dan. A. Daniels and James A. Daniels, by their testimony, confirmed the evidence of Elliott; they having also testified that it was expressly agreed that Daniels should be the managing partner. This was the subject of the second exception. The evidence objected to, as stated in the seventh exception, is, that of Dan. A. Daniels, who testified that Sayles being unable to contribute thereto, he, Daniels, took up a prior mortgage upon the property of the firm, and, for the same reason, foreclosed the mortgage. The eighth exception is an objection not to any particular testimony, but to all and any evidence of individual acts of Daniels as one of the firm of Daniels & Sayles. Now, all this testimony went to show what was properly admissible—that Daniels actually conducted all the business of the firm, and controlled it all,—whether buying or selling,—and that Sayles did no act except under the direction of Daniels. These several exceptions must be overruled.

There are two other exceptions to testimony offered under the second defence, viz., the third and fourth. The third is to the testimony of James A. Daniels, that he made up from the books of the firm an account showing the state of the accounts between the partners, which showed a large balance against Sayles, and produced the account. He had sworn, that in the month before the making of this account, Sayles had seen and examined the books from which the account was drawn off. It had also been proved, that the firm was insolvent. Sayles, unable to contribute to the payment of the debts, had been informed, upon his enquiry, that all the goods had been sold, being the goods in question in this case. This state of the accounts in books kept by the actually managing partner, presumed to have been seen by and known to Sayles was apparently admitted, and was certainly admissible, to show that Sayles had no such interest in the firm as to make it desirable for him to act as a managing partner. Its tendency, by Sayles' silence, is to show more: that he objected to no acts of Daniels as agent, nor expressed any desire to act himself.

The fourth exception is to the testimony of Dan. A. Daniels, that Sayles told him he was going away, and was anxious to

retain his interest in the concern, and that this was the reason there was no dissolution of the firm, and that he, Daniels, had paid all the debts of the firm. Sayles said more at this time,— that he was going away and needed all his means. This was properly admitted to show the little pecuniary interest that Sayles had in the firm; that there was no reason why he should act, or that he should desire to act, and that he expressed no such desire. This exception, also, must be overruled.

In the argument of the motion for a new trial, other objections to the charge, as delivered, were made; but as they were not in the motion set down as grounds of new trial, we should be travelling out of the record now to consider them, even if we were inclined to sustain them.

Upon the whole, we are of opinion that no sufficient ground is shown for a new trial in this case, and the motion must be denied, with costs.