## ROBB v. MOFFETT.

No. 15542—Opinion Filed Sept. 15, 1925.

1. **Joint Adventures — Improvement and Sale of Property on Credit—Time for Division of Profits.**

Where M. and R. agree to buy lots and build a house thereon and divide the profits, if any, upon the sale of the house, and R. advances $1,250 to purchase lots, and executes a first mortgage for $3,000, and after the completion of the house M. and R. agree to and do sell the house subject to the first mortgage, and agree to take $500 cash and notes secured by second mortgage for the deferred payments, M. cannot maintain an action for a money judgment against R. for a sum equal to one-half of the agreed purchase price, over and above the cost of the lots and the house, until such time as such promissory notes are paid or cash realized on the same by discount or sale of the notes by mutual consent.

2. **Same—Premature Action for Share of Profits.**

Where M. and R. agree to share the profits of a venture, and the profits, if any, depend upon the happening of a contingency, and the ultimate profits are uncertain and impracticable of determination by any trustworthy mode of computation at the time of filing an action by M. to recover from R. one-half the net profits of the venture, such action is prematurely brought, and no recovery can be had by M. in the action.

3. **Appeal and Error — Sufficiency of Evidence—Conclusiveness of Verdict.**

The Supreme Court will not disturb the verdict of a jury where there is any evidence reasonably tending to support the same, but where there is a total lack of evidence, tending to support the verdict, the same will be reversed and the cause remanded.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from Court of Common Pleas, Tulsa County; Font L. Allen, Judge.

Action by H. R. Moffett against Pearl Robb on a written contract. Plaintiff sought to recover a sum of money equal to one-half of the difference between the cost price and the selling price of a certain house as profits. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Lewis & Wortman, for plaintiff in error.

J. W. Simpson, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendant will be designated herein as they appeared in the trial court. It appears from the record, plaintiff was connected with a firm of real estate dealers in Tulsa, and entered into a written agreement with defendant, by the terms of which defendant was to furnish the money and plaintiff the "brain," or "ability" for the securing of land and the building of a house thereon. Defendant agreed to sell the house, and share with the plaintiff the profits realized on such sale. Defendant furnished $1,250, and purchased the lots, and plaintiff secured a loan on defendant's lands for the purpose of erecting the house. The house was erected at a cost of $3,139.35, exclusive of the cost of the lots. The house was sold and the consideration named was $5,500, and plaintiff sues for one-half the difference between the cost price and the selling price as profits.

The parties signed two agreements as follows:

(1) "Tulsa, Oklahoma, February 26, 1923. Contract made and entered into this 26th day of February, 1923, by and between Pearl Robb, party of the first part, and H. R. Moffett, party of the second part, to erect, build and sell a certain house on lots 55-56, block 7, College View addition to the city of Tulsa. Party of the first part agrees to furnish the sum of $1,250 cash to purchase lots, party of the second part agrees to finance the building of said house, to, if necessary, pay the initial interest or loan payment until property is sold. It is further agreed that when this said house is complete and sold, that the said profits derived from the sale of same to be divided equally between the above mentioned parties.

"(Signed) Pearl Robb.

"(Signed) H. R. Moffett."

(2) "Tulsa, Oklahoma, May 15, 1923.

"It is hereby agreed between Pearl Robb and H. R. Moffett that, in consideration of the covenants hereinafter to be performed by the parties hereto that: First. That the net profits derived from the sale of house and lot No. lots 55 and 56, block 7, College View addition to Tulsa, Okla., to Mrs. Einhorn, shall be divided equally between the parties hereto, except that the sum of $319.70, the cost of extra improvements thereon, shall first be deducted from the said Moffett's share of said net profits. Second. It is further agreed that the said Pearl Robb shall pay to the said Moffett the sum of $33.55, advanced by him for excavation and grading of said premises in addition to his share of net profits. Third. It is further agreed that this agreement shall be substituted for and take the place of any and all verbal or written agreements concerning the property hereto entered into between the parties hereto.

"(Signed) H. R. Moffett.
"(Signed) Pearl Robb."

It would appear from the record that plaintiff had the house sold before the agreement was entered into, and deposit of $100 made, and this purchaser defaulted and forfeited her $100 to the real estate firm. Afterwards it was again sold, and the real estate firm, with which the plaintiff appears to have been connected, charged $200 commission for selling the house, notwithstanding plaintiff agreed to furnish the "brains" and sell the house, but with these questions we are not concerned, as a determination thereof is unnecessary at this time. Plaintiff secured a loan of $3,000 on the property, defendant signing the mortgage, obligating herself to pay this sum. The house was sold for $5,500 on terms. $500 was paid in cash, but whom the cash was paid to does not appear in the record. The purchaser assumed the $3,000 first mortgage and gave a second mortgage for the balance. These notes are now held by defendants, who answered, admitting the execution of the contracts, and alleging she owed the plaintiff nothing, as at the time suit was filed there were no profits.

The evidence discloses the purchaser is "falling down": that is, defaulting in the payments. Whether this default occurred on the first or second mortgage, or on both, does not appear from the record. It does not appear that defendant has ever received the $1,250 originally invested in the lots, but it does appear that no cash profits have been realized, the defendant simply holding the purchaser's promises to pay at a future date. Defendant offered to place the second mortgage notes in a bank subject to a division of the profits when the notes were paid.

The plaintiff brought his action praying a division of the net profits, as shown by the cost price and the selling price, which profits were only represented by promises to pay, which promises were not being fulfilled.

"Net profits" are the clear gain of a venture, after deducting from the net value of all assets on hand, the capital invested and all outstanding liabilities. Thurston v. Hamblin, 199 Mass. 151, 85 N. E. 82. See, also, City of Erie v. Erie Gas & Mineral Co., 78 Kan. 348, 97 Pac. 468; Arthur Jordan Co. v. Caylor, 36 Ind. App. 640, 76 N. E. 419; Cooke v. Cain, 35 Wash. 353, 77 Pac. 682; Crawford v. Calkins, 170 Mich. 587, 136 N. W. 369; Di Palma v. Weunman, 16 N. M. 302, 121 Pac. 38; Words and Phrases (2nd Series) vol. 3.

Under the evidence in this case, the fact whether a profit will ever be realized depends upon contingencies. Plaintiff secured a $3,000 loan on lots bought and paid for by defendant and defendant signed the mortgage. If the purchaser defaults in the payment of the first mortgage, foreclosure proceedings could be instituted and the property sold, thereby adding several hundred dollars cost and expenses, thereby reducing the ultimate profits materially. If the property should sell for less than the sum of the principal of the first mortgage, plus interest, taxes, cost and attorneys' fees, the venture would show a loss instead of a profit, and as defendant executed the first mortgage, a deficiency judgment might be rendered against defendant, causing her to bear the loss in addition to the cash already advanced by defendant for the purchase of the lots. If it became necessary to foreclose under the second mortgage, subject to the first mortgage, the profits accruing to the joint adventurers would be the difference between the cost price and the sale price plus costs and expenses incurred.

"In an action for breach of contract, profits are uncertain which are purely speculative in their nature, and dependent on so many incalculable contingencies as to make it impracticable to determine them by any trustworthy mode of computation." Dickerson v. Finley, 158 Ala. 149, 48 South. 548.

In the instant case, it is impossible to determine what the net profit, if any, will eventually be, by any trustworthy mode of computation. The question revolves around the ultimate payment for the property by the purchasers.

The plaintiff or the realty firm first sold

the property to one party who defaulted and forfeited a $100 deposit. The realty firm got this $100, and there was no "profit" in that deal to this plaintiff. The realty firm then sold to another purchaser, who deposited $500, and the realty firm charged and received $200 as commission, and up to the time of the trial there appears to have been no "net profit" except to the realty dealers. The second purchaser was in default at the time of the trial, and if she forfeits the $500 deposit, there is yet no "net profit" shown. In Eyster v. Centennial Board of Finance, 94 U. S. 500, 24 L. Ed. 180, it is said:

"Popularly speaking, the net receipts * * * would represent the net profits."

In the instant case the defendant has not received the cash advanced, and the "receipts," if any, were far less than the sum of the cash advanced, and the record is silent as to the disposition of these "receipts," except such as were paid to or retained by the realty firm.

Plaintiff cannot maintain his action for one-half of the net profits where the evidence discloses no profits have been realized, and the realization of profits is uncertain and the ultimate profits depend upon a contingency. To permit the plaintiff to recover judgment for one-half of the "paper profits" that might never be realized would be unjust and unconscionable.

An effort was made to introduce evidence to prove that these notes taken by plaintiff and defendant, secured by second mortgage, could not be discounted for more than 35 per cent. of their face value, but this evidence was excluded, and the evidence showing default was made in the payment of the obligation certainly rendered them valueless.

We are of the opinion that this suit was prematurely brought, as pointed out by defendant, and there was no competent evidence upon which it was practicable to determine profits by any trustworthy mode of computation, and the plaintiff having wholly failed to prove any profits had been realized from the enterprise in which plaintiff and defendant were engaged, the judgment of the trial court should be reversed. with directions to dismiss the plaintiff's petition.

By the Court: It is so ordered.

Note.—See under (1) 33 C. J. p. 862, § 70 (Anno). (2) 33 C. J. p. 862, §70 (Anno). (3) 4 C. J. pp. 854, § 2834, 856, § 2835.