JOHN ARADO, OTTO BURK and LOUIS PURICELLI, copartners, doing business as JOHN ARADO AND COMPANY, v. ELMER JOHN KEITEL, SR., Chairman, GEORGE A. ROZIER, and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, Appellants.—No. 38964.—182 S. W. (2d) 176.

Division One, July 3, 1944.

Rehearing Denied, September 5, 1944.

224

*Edward D. Summers,* Acting Chief Counsel, for appellants; *George A. Rozier* of counsel.

*Moser, Marsalek & Dearing* and *J. C. Jaeckel* for respondents.

VAN OSDOL, C.—Action by plaintiffs (respondents) to re- view a decision of the Unemployment Compensation Commission of Missouri holding that, under the provisions of Section 9427, R. S. 1939, as amended, Laws of Missouri 1941, pp. 592-7, Mo. R. S. A., sec. 9427, a successor employing unit (partnership composed of re- spondents, John Arado, Otto Burk and Louis Puricelli), upon ac- quiring a business, does not stand in the position. (in the respects mentioned in the Section as amended) of the predecessor employing unit, a partnership composed of Philip Darsch, John Arado and Otto Burk. The trial court reversed the decision of the Commission and ordered the cause remanded for further proceedings not inconsistent with the trial court's finding. The members of the Commission (here- inafter referred to as "Commission") have perfected this appeal.

The various state unemployment compensation acts stem from the Federal Social Security Act, 42 U. S. C. A., secs. 301-1307. It is stated that such acts have now been passed in all the states of the Union. Such legislation was inspired by the economic emergency which threatened this country early in the last decade and was enacted with the purpose of relieving the distress of unemployment. Kellogg v. Murphy, 349 Mo. 1165, 164 S. W. 2d 285.

Under the provisions of the Unemployment Compensation Law of Missouri (Article 2, Chapter 52, R. S. 1939, as amended) the em- ployer in the law defined is required to pay (an excise tax) contri- butions into the unemployment compensation "pooled fund"; the amounts of the contributions paid by each employer, however, are credited to the employer's separate account maintained by the Com- mission, and all benefits paid to an eligible individual are charged against the account of the employer. The rate of an employer's con- tributions to the fund is classified in a relation to the employer's suc- cess in effecting employment stabilization. Contributions in amounts equal to two and seven-tenths per centum of wages paid by the em- ployer during the calendar year are required to be paid until there shall have transpired thirty-six calendar months immediately pre- ceding a calculation date throughout which period the employer's account could have been chargeable with benefits; thereafter, upon a calculation date fixed by regulation, the contributions rate of an employer is classified in accordance with his actual experience in the payment of contributions in his own behalf and credited to his ac-

count, and with respect to benefits charged against his account. If the total of all contributions paid and credited to the employer's account for all past periods preceding a calculation date exceeds total benefits charged to his account during such periods, and the excess equals or exceeds given percentages of the employer's average annual pay roll, his contributions rate is reduced to stated percentages of the wages paid by the employer during the calendar year; if the excess equals or exceeds 15 per centum of his average annual pay roll his contributions rate is reduced to nothing; but, if for one of specified alternative periods, the total of an employer's contributions paid and credited to his account is less than the total benefits charged against his account, his contributions rate is increased to three and six-tenths per centum of the wages paid by him. Subsection (c), Section 9427 as amended, Laws of Missouri 1941, pp. 592-4, Mo. R. S. A., sec. 9427.

It is provided that an acquiring successor employing unit, upon the acquisition of an organization, trade or business of an employer, stands in the position of the predecessor employing unit in all respects, including the predecessor's separate account, actual contribution and benefit experience, annual pay rolls, and liability for current or delinquent contributions, interest and penalty and contributions rate whether more or less than two and seven-tenths per centum, if the Commission finds ▇▇▇ that ''(i) immediately after such change the business and activity of the predecessor employing unit or units are conducted solely through the successor employing unit (ii) after such change, such successor is directly or indirectly owned or controlled by legally enforceable means by the same interests, as owned or controlled the predecessor employing unit prior to such acquisition (and for the purpose of this subsection, direct or indirect ownership by the same interests of the majority of the voting shares of an employing unit shall, among other things, constitute *prima facie* evidence of control by legally enforceable means) and (iii) the consideration of such two or more employing units as a single employing unit for the purposes of this section will not tend to defeat or obstruct the object and purpose of this law, . . . '' Subsection (h), Section 9427, as amended, supra.

In the instant case, since the acquisition, the (restaurant) business of the predecessor (partnership composed of Darsch, Arado and Burk) has (i) been conducted solely through the successor employing unit (partnership composed of Arado, Burk and Puricelli), and Commission did not rest its decision upon (nor is there evidence to support) a finding that (iii) the consideration of the predecessor and successor employing units as a single employing unit (for the purpose of Section 9427, as amended, supra) will tend to defeat the object and purpose of the Unemployment Compensation Law. Commission decided that the successor employer does not stand in the position of the predecessor employer (ii) ''because it has not been found that the

(successor) employer is directly or indirectly owned or controlled by legally enforceable means by the same interests which owned or controlled the predecessor employer.''

Commission's decision was based on the following findings of fact (made by the Commission's special representative) adopted by the Commission,

''John Arado, Otto Burk and Philip Darsch, as copartners, conducted a restaurant business known as Philip Darsch & Company. This partnership was an employer subject to the Missouri Unemployment Compensation Law, and it paid contributions as such. John Arado and Otto Burk each owned a 15% interest in the business. Philip Darsch owned a 70% interest. While there was no written or oral agreement specifically setting out the terms of the partnership contract, Philip Darsch, in fact, exercised the controlling voice in the management of the affairs of the partnership.

''As of October 1, 1941, Philip Darsch sold his 70% interest in the business to John Arado. John Arado immediately sold a 10% interest to Louis Puricelli. Thus, a new partnership was formed by verbal agreement composed of John Arado, Otto Burk and Louis Puricelli. This partnership took over all of the business and activity of the predecessor partnership and became an employer subject to the Unemployment Compensation Law as of October 1, 1941 under the provisions of Section 9423 (h) (2) R. S. Mo. 1939, as amended 1941. John Arado owned a 75% interest, Otto Burk owned a 15% interest and Louis Puricelli owned a 10% interest in the partnership business. The business continued to be known as Philip Darsch & Company until June 1, 1942, at which time the name was changed to John Arado & Company. After the new partnership was formed John Arado took over and exercised the management and control of the affairs of the partnership which had been exercised by Philip Darsch in the predecessor partnership.''

It is noted that Arado and Burk were and are a majority of the partners in the respective (partnerships) employers and that Commission found as a fact that Darsch, who is not a partner in the successor employer, ''in fact, exercised the controlling voice in the management of the affairs'' of the predecessor employer; notwithstanding this fact so found, we believe the successor employer is under the facts, as a matter of law, directly or indirectly owned or controlled by legally enforceable means by the same interests as owned or controlled the predecessor employer. Cases of Krisman v. Unemployment Compensation Commission et al., 351 Mo. 18, 171 S. W. 2d 575; Kellogg v. Murphy, supra; and Murphy v. Doniphan Tel. Co., 347 Mo. 372, 147 S. W. 2d 616, cited by Commission, involve Subsection (h), Paragraphs (1) and (4) of Section 9423, R. S. 1939, prior to the amendment thereof of 1941. See now Subsection (h), Paragraphs (1) and (4), Section 9423, Laws of Missouri 1941, pp. 570-1 and Laws

of Missouri 1943, pp. 923-4; Mo. R. S. A., sec. 9423; it will be noticed that Paragraph (4), "affiliate clause," Subsection (h), Section 9423, supra, prior to the amendment, defined the word "employer" as "(4) Any employing unit which, together with one or more other employing units, is owned or controlled by legally enforceable means *or otherwise,* directly, or indirectly, by the same interests, or which owns or controls one or more other employing units by legally enforceable means *or otherwise,* and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection; . . . " (Our italics.) And under this subsection, prior to the amendment, the cases cited supra hold that several "employing units" constitute an "employer" if, in addition to other facts, there is actual joint (or common) control of the several employing units by the same interests.

As stated supra, by the amendment (1941) of Section 9427, supra, the second (ii) prerequisite provided in Subsection (h), in order to effect the purpose of the section, is, "such successor is directly or indirectly owned or controlled by *legally enforceable means by the same interests,* . . . " (Our italics.)

 Fundamental principles of the law of partnership are that each partner is the agent of the others and of the partnership, and each has a voice in the management of the partnership business enterprise. Schneider v. Schneider, 347 Mo. 102, 146 S. W. 2d 584. In case of diversity of opinion between the partners as to the partnership business and the conduct thereof, and there is no stipulation in the partnership contract, the decision of a majority of the partners acting in good faith and within the scope of the partnership business binds the partnership. 40 Am. Jur., Partnership, sec. 116; Strickland Printing & Stationery Co. v. Chenot (Mo. App.), 45 S. W. 2d 937. But where the terms of the contract of partnership confer the power of control over the business of the partnership upon one of the partners, the stipulation will govern. 40 Am. Jur., Partnership, sec. 115.

 The case of Texas Unemployment Compensation Commission et al. v. Bass et al., 137 Texas 1, 151 S. W. 2d 567 (see also 142 S. W. 2d 406) cited by Commission, although involving an "affiliate clause" quite like our Subsection (h), Paragraph (4), Section 9423, prior to the (1941) amendment thereof, illustrates the means by which the control of a partnership may be enforced. In that case, one (1) of three partnerships was composed of McLemore, H. J. Bass and Ray; another (2) McLemore, H. J. Bass, Ray and Graves; and the other (3) McLemore, H. J. Bass, Ray and H. K. Bass. Observe that McLemore, H. J. Bass and Ray constituted a majority common to the three partnerships. It appears, however, that by contract of the partners, entered into at the inception of the several partnerships, number (1) partnership had been placed in the active and *exclusive control* of Ray; number (2) in the active and *exclusive control* of Graves; and

number (3) in the active and *exclusive control* of H. K. Bass. In rejecting the contention that the "control" referred to in the "affiliate clause" is the *control which would exist under the law, absent an agreement between the partners to the contrary* and that, therefore, the several partnerships constituted an "employer," the court held that the "only control that is enforceable in this instance is that which the partners have agreed to." Said the court (151 S. W. 2d at page 569), "As a general rule, partnerships are legally under the control of the majority of the partners; but, as between themselves, the members of the partnership may. vest the sole control in one of the partners to the exclusion of all the others."

In the instant case, it was found by Commission that Darsch exercised the controlling voice in the management of the affairs of the predecessor employer *in fact*. A distinction may be drawn between the active actual control of a partnership business which a partner may exercise as the active agent of the partnership, which control may at any time be legally withdrawn and exercised by the majority of the partners, and the *legally enforceable control* of a partnership business which a partner may exercise by virtue of an exclusive control vested in him by the terms of the partnership agreement. Commission was justified in inferring from the evidence that the active management and control of the predecessor employer was in Darsch, and that the active management and control of the successor employer is in Arado. The findings of fact, however, negative the existence of a written or oral agreement of the partners of the predecessor employer specifically setting out the terms of the partnership contract, thereby negativing that partner Darsch (because of, or independently of, the fact that he owned 70% of the interest in the predecessor employer) had sole control of the predecessor employer under the terms of a partnership agreement by the means of which he could legally enforce control. And there was no testimony introduced from which it may be inferred that there was a diversity of opinion between the partners of the predecessor employer as to the conduct of the partnership business and that the acts of the partnership were controlled by Darsch in collaboration with Arado to the exclusion of Burk, or in collaboration with Burk to the exclusion of Arado. Darsch's active management and control of the affairs of the predecessor employer, then, was that of agent of Arado, of Burk and of the partnership, and for himself. The acts of the predecessor employer, although effective through the active partner, were the acts of Arado and Burk, since the active control of Darsch was that of a partner in whom copartners had not by the terms of a partnership agreement vested the exclusive control.

Although Commission did not specifically find that the verbal agreement by which the successor employer, composed of respondents, was formed did not set out the terms of the partnership contract, it was

found that Arado "took over and exercised the affairs of the (successor) partnership which had been exercised by" Darsch; that is, the active management and control in fact. We construe this finding to negative that Arado (because of, or independently of, the fact that he owned 75% of the interest in the successor employer) has exclusive control of the successor employer under the terms of the partnership agreement by the means of which he could legally enforce control. And there was no testimony introduced from which it may be inferred that there is a diversity of opinion between the partners of the successor employer regarding the conduct of the partnership business and that the affairs of the partnership are controlled by Arado in collaboration with Puricelli to the exclusion of Burk. Arado's active control of the affairs of the successor employer, therefore, is that of agent of Burk, of Puricelli and of the partnership, and for himself. Acts of the successor employer, effective through the active partner Arado, are the acts of Arado and Burk who by legal means controlled the predecessor employer. Respondent Puricelli cannot dominate the affairs of the new partnership by a lawful means, except in collaboration with Arado or Burk; but we have seen, the managerial policy of the predecessor employer was responsive to Arado and Burk.

Now attending the purpose of the legislature in enacting the Subsection (h), amending Section 9427, supra, in connection with the facts of our case—it may be reasonably presumed that the active managerial policy of an organization, trade or business is responsive to those interests which have the means to legally enforce the control of the enterprise. We venture that the legislature deemed that the managerial policies of predecessor and successor employers, in relation to unemployment risk, would be more liable to be the same if the same interests were vested with the legal means to enforce control of the respective employers whether the active control in fact were in the same or different interests, than if the legal means to enforce control of the respective employers were vested in different interests notwithstanding the active control in fact of the respective employers were the same.

We conclude that respondents should be held to stand in the position of the predecessor employer in the respects contemplated by Subsection (h), Section 9427, as amended, supra. The trial court's judgment reversing the decision of Commission and ordering the cause remanded for further proceedings not inconsistent with the finding of the trial court should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.