Darrell D. PARKS, Carl T. Ramsey and
Phillips Petroleum Company, a cor-
poration, Appellants,

v.

RIVERSIDE INSURANCE COMPANY
OF AMERICA, Appellee.

No. 6890.

United States Court of Appeals
Tenth Circuit.

Aug. 31, 1962.

**176**

S. E. Floren, Bartlesville, Okl. (William J. Zeman, Lloyd G. Minter, Robert H. Neptune and J. Douglas Lane, Bartlesville, Okl., with him on the brief), for appellants.

Joseph A. Sharp, Tulsa, Okl. (Truman B. Rucker and Rucker, Tabor, Best, Sharp & Shepherd, Tulsa, Okl., with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and SETH, Circuit Judges.

PHILLIPS, Circuit Judge.

On April 8, 1958, Ramsey was injured while working as an employee for the Phillips Petroleum Company, hereinafter called Phillips, at Phillips Research Center near Bartlesville, Oklahoma. Ramsey filed suit against Parks in the District Court of Washington County, Oklahoma, to recover damages for his injuries, alleging they were caused by the negligence of Patterson, a servant and employee of Parks. Parks made demand upon Riverside Insurance Company of America, hereinafter referred to as Riverside, his individual liability insurance carrier, to defend the suit and to indemnify him from any judgment which might be obtained.

Subsequently Riverside filed the instant action in the United States District Court for the Northern District of Oklahoma against Parks d/b/a Parks Construction Company, Parks individually, Patterson, Ramsey and Phillips, seeking a judgment declaring that a liability policy issued by Riverside to Parks's predecessor in business and thereafter extended to cover Parks did not cover the accident in which Ramsey was injured and that Riverside had no duty to defend the state court action, nor to indemnify Parks from any judgment which might be obtained in such action. The court concluded that the policy did not cover the accident, that Riverside had no duty to defend Parks in the state court action and was not obligated to indemnify Parks for any judgment recovered against him in such action. Judgment was entered accordingly and Parks, Ramsey and Phillips have appealed.

The evidence presented at the trial established the following facts:

On May 6, 1957, Riverside issued its liability policy to John C. Parks d/b/a Parks Construction Company. John C. Parks was the father of Darrell D. Parks. Darrell D. Parks succeeded his father as the operator of Parks Construction Company in July, 1957, and thereafter Riverside extended coverage under the policy to Darrell D. Parks d/b/a Parks Construction Company.

In December, 1957, Patterson, an employee of Parks Construction Company, purchased from Parks for $6,000 a one-half interest in a crane carrier and crane. After such sale Parks opened a checking account under the name of P & P Equipment Company. Parks had authority to issue checks on such account, but Patterson did not. When a job requiring the crane was to be performed, Patterson operated it. For his time spent in operating the crane, Patterson was paid a salary. Such salary, the wages of Patterson's helper and the other costs and expenses arising out of the operation of the crane were paid by checks drawn on the P & P account. Proceeds from jobs performed by Patterson with the crane were deposited by Parks in the P & P account. At the end of each month, any amount of money in the P & P account in excess of $800 was divided equally between Parks and Patterson. P & P Equipment Company kept its own separate set of books and records and filed federal withholding tax returns.

After the sale of the one-half interest in the crane to Patterson, Parks continued to solicit and arrange all jobs on which the crane was to be used, did not consult Patterson in making such arrangements, and took such jobs under the name of Parks Construction Company. Parks also computed the charges for each job on which the crane was used without consulting Patterson. A substantial number of jobs were contracted for and performed by P & P Equipment Company, between December, 1957, and May, 1958, and the net profits therefrom were divided equally between Parks and

Patterson. When there were no jobs on which the crane was being used, Patterson operated other equipment for the Parks Construction Company and was paid wages therefor.

The premium on the liability policy was subject to adjustment after payroll audits. The books and records of the P & P Equipment Company were never included in such audits and the auditor for the insurance company had no knowledge of such company or its books and records.

On April 7, 1958, Parks entered into an oral agreement with Phillips to perform certain work at the Research Center and on April 8, Patterson and a truck driver took the crane to the Research Center at Parks's direction. During the course of the work being performed by Patterson with the crane, the accident occurred in which Ramsey was injured. Parks billed Phillips for the work done on April 8, in his own name. The bill was paid by check made out to Parks individually and he deposited the check in the P & P account. The wages of Patterson and the truck driver and other expenses arising out of the Phillips job were paid by checks drawn on the P & P account.

As a result of Ramsey's injuries, Phillips made certain workmen's compensation payments to him and has become subrogated to his rights against third persons to the extent of such payments.

The trial court found that Parks and Patterson were co-owners of the crane and that they shared the profits from the operation of the crane. Based on these findings, the court concluded as a matter of law that their arrangement constituted a joint adventure, doing business as P & P Equipment Company, and that the job at the Research Center was performed by such joint adventure under a subcontract from Darrell D. Parks.

The concept of joint adventure is of comparatively recent origin and, at common law, enterprises of the type which are now called joint adventures were regarded merely as informal partnerships.[1] A joint adventure has been defined as "a special combination of two or more persons, whether corporate, individual or otherwise, where in some specific venture a profit is jointly sought without the necessity of any actual partnership or corporate designation."[2]

In most instances the legal rights, duties and obligations are the same, whether the relationship is a joint adventure or a partnership, and it is frequently stated that the law of partnerships is applicable to joint adventures.[3] However, in the instant case it is necessary to make a determination as to the exact nature of the relationship between Parks and Patterson, because, as will be shown, under Oklahoma law a partnership is a distinct legal entity, but a joint adventure is not.

The appellants contend that under Oklahoma law a joint adventure is not a distinct legal entity, and hence Parks was individually liable to Ramsey and such liability was within the coverage of the liability policy. In support of this contention, they cite W. B. Johnston Grain Company v. Self, Okl., 344 P.2d 653. In that case Self was awarded compensation by the Oklahoma State Industrial Commission against W. B. Johnston Grain Company and its insurance carrier and the insurance carrier brought an original proceeding to review the award, contending that Self was not the employee of W. B. Johnston Grain Company, the named insured, but was the employee of a joint adventure designated as W. B. Johnston Grain Company and Associates, and that the carrier was, therefore, not liable for the

1. 48 C.J.S. Joint Adventures § 1, p. 807.

2. Vilbig Const. Co. v. Whitham, 194 Okl. 460, 152 P.2d 916; Bowmaster v. Carroll, 8 Cir., 23 F.2d 825, 827.

3. O. K. Boiler & Welding Co. v. Minnetonka Lumber Co., 103 Okl. 226, 229 P.

1045, 1046, 1048; 48 C.J.S. Joint Adventures § 5 a, p. 823; Vilbig Const. Co. v. Whitham, 194 Okl. 460, 152 P.2d 916, 919; Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 830; Twyford v. Sonken-Galamba Corporation, 177 Okl. 486, 60 P.2d 1050, 1051, 1052.

**178**

award. It was stipulated that if Self was the employee of anyone, his master was W. B. Johnston Grain Company and Associates, a joint adventure. The Oklahoma Supreme Court sustained the award and the Syllabus by the Court reads as follows:

"1. When parties associate together in a joint adventure, a status or relationship is established between the members thereof similar to the relationship between partners. But unlike a partnership, the establishment of a joint adventure does not create a distinct legal entity separate and apart from the parties composing it; therefore, an employee engaged in activities of the joint adventure is an employee of each of the joint adventurers, under ordinary principles of agency.

"2. The liability of joint adventurers for Workmen's Compensation to an employee engaged in activities of the joint adventure is joint and several, and as to such employee the various members' insurance carriers, if any, are also jointly and severally liable."

■ In the case of Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse, Okl., 268 P.2d 886, Mouse obtained a judgment for personal injuries against his employers, a partnership. He then brought garnishment proceedings against Farm Bureau Mutual, the liability insurance carrier of one of the individual partners. The policy of insurance expressly excepted from coverage employees of the named insured. The Oklahoma Supreme Court affirmed a judgment against the garnishee insurance carrier, on the theory that a partnership is a distinct entity and that Mouse was an employee of such entity, rather than the individual co-partners, so that the exception in the policy was not applicable. The Syllabus by the Court reads in part as follows:

"1. A partnership is a distinct entity from the individual members constituting it.

"2. A partnership as employer constitutes an entirely different employer than would exist if one of the partners was the individual employer."

Applying Oklahoma law as expressed by these two cases to the instant case, if the relationship between Parks and Patterson was a joint adventure, as the trial court concluded, then, since such joint adventure is not a distinct legal entity, the liability policy must be held to cover the accident in which Ramsey was injured. If, however, such relationship was a partnership, then, since such partnership is a distinct legal entity, such policy must be held not to cover the accident.

A review of the Oklahoma cases dealing with joint adventures indicates that the Oklahoma Supreme Court has had little occasion to make a distinction between joint adventures and partnerships. In most of the decided cases, the decisions would have been the same, whether the relationships presented were joint adventures or partnerships, since the law of partnerships is, in most instances, applicable to both relationships.

■ However, it is settled law in Oklahoma that a partner cannot maintain an action at law on a claim growing out of partnership transactions until there has been an accounting and final settlement of partnership affairs,[4] but a joint adventurer can maintain such action at law without the necessity of such accounting and final settlement.[5] Therefore, an examination of the Oklahoma cases in which actions at law have been allowed without the necessity of an accounting and final settlement will help us determine the features which distinguish, under Oklahoma law, a joint adventure from a partnership. The cases which fall into that category are set

4. Knapp v. First Nat. Bank & Trust Co., 10 Cir., 154 F.2d 395, 398 and cases cited therein.

5. Wertzberger v. McJunkin, 171 Okl. 528, 43 P.2d 729, 732.

forth in the note below.[6] The only feature present in the relationships in each of those cases, differentiating them from relationships usually held to be partnerships, is that a single transaction was involved, rather than the operation of a general business activity. Hence, it would seem that under Oklahoma law a joint adventure contemplates a single transaction, while a partnership contemplates the operation of a general business. That conclusion receives support from the case of Smith v. Burt, 150 Okl. 34, 300 P. 748, where at page 751 the Oklahoma Supreme Court quotes with approval the following language from Reece v. Rhoades, 25 Wyo. 91, 165 P. 449:

> "A joint adventure partakes of the nature of a partnership and is governed substantially by the same rules of law, the principal distinctions being that a joint adventure usually relates to a single transaction, though it may comprehend the business continued for a period of years, * * *."[7]

There is no evidence in the record indicating an intent that the joint operation of the crane would be limited to a single transaction. On the contrary, the evidence clearly shows that Parks and Patterson intended that the P & P Equipment Company should perform all jobs on which the crane was used and that they contemplated a continued operation of the business by the P & P Equipment Company. The actions of the parties were consonant with that intent. During the period of approximately 18 months the P & P Equipment Company engaged in business, they performed a large number of crane service jobs. In the first five months of 1958 approximately 25 jobs were performed. The gross receipts from jobs performed in 1958 were $9,507.73. When they dissolved the relationship on May 31, 1960, they referred to it as a partnership.

The Uniform Partnership Act was adopted in Oklahoma in 1955. 54 Okl.St. Ann., §§ 201 to 244, inclusive. Section 206(1) defines partnership as follows: "A partnership is an association of two or more persons to carry on as co-owners a business for profit." Section 218 in part provides: "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules: * * * (e) All partners have equal rights in the management and conduct of the partnership business." (Emphasis ours.) It will be observed that the declaration of the statute as to the rights of a partner in the management and conduct of the partnership business is "subject to any agreement" between the partners.

The Supreme Court of Oklahoma has held, by decisions rendered both before and after the adoption of the Uniform Partnership Act, that one of the elements of a partnership was "such a community interest, as far as third persons are concerned, as enables each party to make contracts, manage the business and dis-

---

6. Robb v. Moffett, 112 Okl. 20, 239 P. 674 (Action for breach of joint adventure contract providing for purchase of land on which a house was to be built and then sold, with profits to be divided between the joint adventurers); Smith v. Burt, 150 Okl. 34, 300 P. 748 (Action to obtain contribution from co-joint adventurers, where joint adventure consisted of the purchase of an oil and gas lease and the development and operation of such lease); Kirtley v. Kirtley, 163 Okl. 114, 21 P.2d 36 (Action to recover interest in real property, which constituted the profit arising out of a joint adventure to sell a ranch); Shefts Supply v. Fischer, 171 Okl. 72, 41 P.2d 902 (Action for conversion of pipe bought by joint adventurers for resale); Wertzberger v. McJunkin, 171 Okl. 528, 43 P.2d 729 (Action to obtain contribution from co-joint adventurer, where joint adventure consisted of the operation of two oil and gas leases); McMurtray v. Hamilton, 191 Okl. 657, 132 P.2d 335 (Action to recover money spent in purchasing property, which was the subject of the joint adventure).

7. See also: Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 830; Taylor v. Brindley, 10 Cir., 164 F.2d 235, 240; 48 C.J.S. Joint Adventures § 1 b (6), pp. 808, 809.

pose of the property." See Utility Coal Co. v. Rogez, 170 Okl. 264, 39 P.2d 60, 63; Smittle v. Rutherford, 188 Okl. 555, 111 P.2d 480, 482; Dowdy v. Clausewitz, Okl., 361 P.2d 288, 290. But the Uniform Partnership Act recognizes the rights of the partners to agree as to who shall exercise the powers of management of the partnership business.

■ It is, of course, well settled that in the absence of an agreement, express or implied, to the contrary, each partner is entitled to participate in the management of the partnership business and has an equal vote therein,[8] but it is likewise well settled, as we think the Oklahoma Uniform Partnership Act recognizes, that partners may agree that, as among themselves, one or more of them shall have exclusive control over the management of the partnership business,[9] and that an agreement for exclusive control of the management of the business by one partner may be implied from the course of conduct of the parties.[10] Here, it was fairly inferable from the course of conduct of Parks and Patterson that there was an implied agreement that Parks should be the managing partner. The right of the parties to give exclusive control of the management of the business to one partner also has been recognized by the Supreme Court of Oklahoma. In Anderson v. Whitener, 127 Okl. 284, 261 P. 156, the court expressly approved an instruction reading, "In the absence of an agreement to the contrary, every partner is entitled to take part in the management of its business * * *" and this circuit in Wyatt v. Cimarron Insurance Co., 245 F.2d 243, a case governed by Oklahoma law, recognized that the rule that each partner should have an equal right in the management of the partnership affairs was subject to an agreement by the partners to vest the management in a single partner.

Moreover, under § 209 of the Oklahoma Uniform Partnership Act, as between the partnership and third parties, acts of Patterson purporting to act as the agent of the partnership in carrying on the partnership business would have been binding on the partnership, unless the third person with whom he dealt had knowledge that he had no authority so to act.

■ An express agreement to share losses is not essential. Under Oklahoma law, as well as under general law, such an agreement is implied from the agreement to share profits.[11]

The evidence clearly established that Parks and Patterson adopted the trade name of P & P Equipment Company; that they kept books and records relating to crane jobs; that they opened and maintained a bank account in that name; that a salary to Patterson during the periods the crane was operated, the wages of Patterson's helper and other costs and expenses arising out of the operation of the crane were paid by checks drawn on such bank account; that payments for crane jobs, including the Phillips job, were deposited in the P & P bank account; that Parks and Patterson made equal contribution to the capital with which the crane service business was conducted, were equal owners of the P & P Equipment Com-

8. Platt v. Henderson, 227 Or. 212, 361 P.2d 73, 85; Church v. Collier, 71 Ariz. 353, 227 P.2d 385, 388; Armstrong v. Commissioner of Internal Revenue, 10 Cir., 143 F.2d 700, 704; Anderson v. Whitener, 127 Okl. 284, 261 P. 156, 160.

9. Eduardo Fernandez Y Compania v. Longino & Collins, 199 La. 343, 6 So.2d 137, 142; Arado v. Keitel, 353 Mo. 223, 182 S.W.2d 176, 179; Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567, 569; Potter v. Brown, 328 Pa. 554, 195 A. 901, 118 A.L.R. 1415, 1419 (decided under Uniform Partnership Act).

10. Anthony v. Wheatons, 7 R.I. 490, 499, 500; Carpenter v. Bass, Tex.Civ.App., 142 S.W.2d 406, 409, affirmed sub nom. Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567; 68 C.J.S. Partnership § 89, p. 529.

11. See Chowning v. Graham, 74 Okl. 232, 178 P. 676, and cases cited at pp. 676, 677.

pany, and shared equally in the net profits derived from the crane service business.

We conclude that Parks and Patterson were engaged in the general business of operating a crane; that there were present the essential elements to create a partnership relationship between them, and that they were partners, rather than joint adventurers.

Since, under Oklahoma law, a partnership is a distinct legal entity, the principles which the trial court applied were correct, even though it erred in characterizing the relationship as a joint adventure.

Affirmed.