JOHN B. GERARD

v.

ANTOINE GATEAU.

1. PARTNERSHIP — *grounds for dissolving*. The fact that one partner put property into the firm as capital, at a sum greatly in excess of its real value, affords no ground for cancelling the partnership contract. The equities arising from this matter can be adjusted on the dissolution and final settlement of the partnership.

2. SAME—*misconduct as a cause for dissolution*. A court of equity will not dissolve a partnership for every act of misconduct on the part of one partner. To justify a dissolution a strong case must be made. It will not be decreed for trifling causes or temporary grievances involving no permanent mischief. A want of courtesy to some customers of the firm, working no serious injury, is not a sufficient cause.

3. SAME—*hostile relations as a ground of dissolution*. To justify the dissolution of a partnership, on the ground of unfriendly relations between the partners, it must be at the instance of the party who is not himself at fault, and the estrangement must be such as to prevent the successful management of the business. The author of the ill-feeling can not make the relation he has induced the ground of a dissolution.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. EMERY A. STORRS, for the appellant.

Mr. GEO. W. CASS. Mr. R. BIDDLE ROBERTS, and Mr. E. HARVEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The copartnership between the parties to this litigation was for the manufacture and sale of zinc roofing and zinc and other metal ornamental work. It was formed in January, 1872, and was to continue through a period of ten years. Although equal partners, the capital put in was not equal. Complainant put in $12,000 in cash, and defendant was the owner of plaster of paris dies which would be needed in the business of the firm, and which were rated to him as capital at $3500.

It was stipulated the firm was to pay interest on the excess of capital put in by complainant, and it was secured to him upon the stock of the firm.   In the articles of copartnership it was provided what causes should operate as a dissolution: First, death of either party, and second, "incapacity, embezzlement or gross neglect or misconduct of either party."   On account of the latter causes either party could have the firm dissolved by giving thirty days notice to the other party, of such intention, stating in such notice his grounds and reasons for so doing.   After the lapse of a little over two years complainant filed this bill for a dissolution of the copartnership, for an account and for an injunction restraining defendant from interfering with the affairs of the company.   No notice was given of his intention, as provided in the copartnership articles, to ask a dissolution, but, without regard to the agreement, complainant invokes the general powers of a court of chancery.

It is not set forth in the bill, that defendant is wanting in capacity, or that he has been guilty of embezzlement or any other act affecting his integrity of character.   Among the causes alleged for a dissolution of the copartnership, is, the plaster of paris dies, formerly owned by defendant, were put in as capital at a sum greatly in excess of the real value.   Conceding the fact, we do not understand it would constitute any ground for cancelling the partnership contract.   On the dissolution of the copartnership, by lapse of time or otherwise, the equities between the parties, arising out of this cause, could be adjusted.   But upon the principal fact, as to the value of the dies, the evidence is quite conflicting, and if trying the case as an original question, we would be at a loss to determine with which party is a preponderance of the testimony.   Certainly there is no decided preponderance in favor of complainant.

With regard to the overcharge on the work for Oxley & Co. for work done under a special contract for that company, it is hardly of sufficient importance to deserve much consideration.   It was ornamental work of elaborate design, to be used on the State House, and as to the actual cost of the material

and labor, persons skilled in that department of labor differ widely in their estimates. It may or it may not have been an overcharge. There is nothing that shows defendant acted corruptly in the matter. The differences in regard to the price charged were afterwards adjusted with the parties in interest, and no harm came to complainant.

Another cause of complaint is, the prosperity of the firm was impaired by the personal bearing of defendant towards customers. If the inventory taken of the assets of the firm is any where near correct, it can not be the prosperity of the concern was in any great degree affected by the conduct of defendant, whatever it may have been. An unusual measure of success seems to have attended their affairs. In the brief period the firm had been doing business, according to the testimony, the assets of the company had more than doubled, without contracting any considerable amount of indebtedness.

The charge is, defendant had an irascible temper, was insolent in his deportment, or, as one of the witnesses expresses it, was "high and mighty with customers." Evidence introduced shows, that while defendant was disagreeable, and perhaps wanting in courtesy to some, with others he was always pleasant and affable. It is shown that for some time before and after the formation of the copartnership, the social relations of the partners were of the most friendly character. The causes that interrupted those relations were not more serious in their nature than the annoyances that often attend the transaction of any business. We find no well considered case going to the extent that such defect as indicated in the character of one partner, would justify a dissolution of the copartnership contract. Should such a rule be adopted it is apprehended, on account of the infirmities of character, no association of persons for the transaction of business would endure for any great length of time.

As was said by this court in *Cash* v. *Earnshaw*, 66 Ill. 402, it is not for every act of misconduct on the part of one partner, a court of equity, at the instance of another, will dissolve

the partnership and close up the affairs of the company. The court will require a strong case to be made, and it is laid down as a general principle, a court of equity has no jurisdiction to declare a separation between partners for trifling causes or temporary grievances, involving no permanent mischiefs. That defendant's conduct towards some of the customers of the firm is subject to severe criticism, admits of no doubt, but that it worked any permanent mischief to the partnership interests, is not established by any evidence in the case.

The debatable point in the case is, as to the personal relations between the partners, and whether the hostile relations existing are justly attributable to the unreasonable conduct of defendant. This is always a difficult question, and cases differ so essentially in their constituent elements, that we find no accurate and distinct definitions on this branch of the law. That such embittered relations may exist as would render it impracticable to conduct the business, and justify a decree dissolving the partnership, admits of no discussion, on principle as well as upon authority. Permanent mischiefs would be the result, that could only be avoided by a severance of the partnership relations. But that is not the case here. Under the copartnership articles defendant had the principal control of the affairs of the company. Complainant was not obligated to give any more personal attention to the business than he chose to bestow. Defendant was a skilled workman in their business, and complainant was not. This fact was well understood and canvassed before the partnership was formed. Although the social relations between the partners were not what they ought to have been, it is not perceived how the existing ill-feeling could seriously impair the prosperity or interfere with the management of the firm affairs. By positive agreement the business was under the principal control of defendant, and, notwithstanding the want of cordiality, it might be carried on with equal success.

In all the cases we have examined, where the partnership has been dissolved on account of the unfriendly relations between the partners, it has generally been at the instance of a

party who was not himself at fault, and where the estrangement was such as would prevent the successful management of the business. A party who is the author of the ill-feeling between himself and partners ought not to be permitted to make the relation he has induced, the ground of a dissolution of the partnership. His conduct may have been taken with a view to that very result, and it would be inequitable to allow him advantage from his own wrongful acts. It would allow one partner, at his election, to put an end to his own deliberate contract, when the other had been guilty of no wrongful act or omission of duty. The results flowing from the premature dissolution of a partnership might be most disastrous to a partner who had embarked his capital in the enterprise.

Complainant's conduct in relation to the affairs of the company is not altogether blameless, and it may be, defendant's conduct, to which exceptions are taken, was induced, in some measure, by his own action. Principally, it seems, the ill-feeling between the partners was engendered by the employment of a nephew of complainant as a traveling salesman for the house. It was done against the wishes of defendant, and proved, as he anticipated, unprofitable. This young man had before been discharged from the service of the firm on account of his incapacity, and the last employment seems to have been because complainant became responsible for his successful management. A loss ensued, and it was in regard to the salary and traveling expenses of this salesman the parties disagreed. Evidence offered tends to show complainant was in the wrong; but however that may have been, it ought not to have affected, permanently, the social relations of the partners.

We have given this case a most careful consideration, and we can see nothing that would prevent, among reasonable men, a harmonious co-operation between the partners, so far as any is necessary to a profitable prosecution of the common business of the firm, and hence, no reason is perceived for dissolving the partnership.

The decree dismissing the bill and dissolving the injunction will be affirmed.                    *Decree affirmed.*