## Potter et al. *v.* Brown et al., Appellants.

Argued November 30, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George Wharton Pepper* and *Thomas Raeburn White,* with them, *Alexander R. Staples,* for appellants.

*Warwick Potter Scott,* with him *Knox Henderson* and *Ballard, Spahr, Andrews & Ingersoll,* for appellees.

OPINION BY MR. JUSTICE BARNES, January 3, 1938:

The dissolution of a partnership is sought in this proceeding where it is charged that the wrongful conduct of three of the ten members of the firm affects prejudicially the carrying on of its business and renders impracticable the continuance of the partnership.

The parties to this litigation have been conducting a general insurance business in Philadelphia since January 1, 1934, under the firm name of Henry W. Brown & Co. This long established business has been a prosperous one. It was founded in 1871 by Henry W. Brown, the father of defendant, Henry I. Brown, Sr., and has continued through various successor partnerships until the formation of the present firm in 1934. Most of the parties to this litigation have been associated in business for many years. Defendant Brown, Sr., has been actively in control since his father's retirement in 1899. The plaintiffs have been connected with the present and predecessor partnerships for periods varying from twenty-eight years in the case of Potter to nineteen years in the case of Jones. All of the plaintiffs entered the business in minor capacities, and reached their respective positions by their faithful efforts.

The present partnership was formed in 1934, when the parties entered into a written agreement of partnership for a term of five years from January 1, 1934. While the agreement expressly vests in all partners the right to be acquainted with, vote upon and participate in firm business, it confers unlimited control over the business of the firm upon Henry I. Brown, Sr. The partnership articles provide that "The business and capital of the partnership shall be considered as divided into one hundred (100) parts or shares, as a convenient method of determining the rights of the respective partners to profits and as to management"; that

Henry I. Brown, Sr., "shall own a majority of the said shares"; the other partners "shall own such shares and receive such salaries or other compensation as may be arranged by each of them individually with the said Henry I. Brown." A few days later the agreement was supplemented with respect to the interests of some of the partners in the event of death, matters which are not here in issue. On November 22, 1934, Henry I. Brown, Sr., by letter fixed the salary and percentage interest of each of the seven plaintiffs in the firm.*

The articles of partnership further provided that "The vote of the majority in interest of the shares shall, however, control any question which may come up for decision unless otherwise provided herein." The only right reserved to the majority in number of the firm members, rather than in interest, was to vote for admission of partners into the firm, or to terminate the interest of any partner other than Henry I. Brown, Sr.

From the record it appears that the net profits of the business after payment of partners' salaries (other than Henry I. Brown, Sr.) amounted to $80,484.52 for the year 1936, nor did the prosperity of the business decline after the institution of this proceeding, as profits for January and February, 1937, were $26,947.97, compared with a corresponding profit of $20,716.36 for the same months of 1936. The amounts received by the plaintiffs, as salaries, shares of profits and bonuses from the business were substantial, varying from $10,529.72 and $12,133.92, received by Seal in 1934 and 1935, re-

---

* The percentages so agreed upon in so far as the plaintiffs are concerned were as follows: Potter, 7%; Jones, 3½%; Seal, 7%; Booth, 6%; Wise, 5%; Mackerell, one-third of 2½% each year until the end of 1936 when his proprietary interest was to be 2½%. Deacon's interest in the partnership was identical with that of Mackerell.

The interests in the partnership of the defendants Henry R. Ruhl and Henry I. Brown, Jr., do not clearly appear from the record, but such interests are junior ones, while the large majority interest is possessed by Henry I. Brown, Sr.

spectively, to $6,023.10 and $6,812.11 paid to Mackerell in the same years. A portion of the payments to the plaintiffs consisting of personal bonuses was distributed by Henry I. Brown, Sr., out of his individual share of the profits. It was also Mr. Brown's practice to pay similar bonuses to employees of the business in recognition of meritorious services. These bonus payments were customarily made at the end of each year.

There are no allegations here of the failure by the partners to attend properly to the partnership business. The parties concede that the prosperity of the business is due to the skill and efforts of all the partners, each in his particular field. However, the operation of a general insurance business, such as this, requires substantial cash balances for working capital. The major portion of this working capital has been furnished by Mr. Brown, Sr. It has been his custom in the past to permit his share of the profits to accumulate, and to be used by the firm as working capital. At the end of 1936 the partnership was availing itself of approximately $65,000 of undrawn profits payable to Mr. Brown. The other partners withdrew the greater portion of their shares of the profits promptly after they were determined, and since it was the practice of the firm to ascertain profits semiannually, at the time of this litigation there were profits payable to the other partners only for the last six months of 1936.

The partnership differences giving rise to the present litigation concerned the proposed admission into the partnership of Charles H. Moore, who had been the accountant for the firm for several years. At the regular monthly partnership meeting held November 30, 1936, Henry I. Brown, Sr., proposed to his associates that new articles of partnership for a ten-year period be executed, giving to him complete control over partnership affairs without any limitation whatsoever, and that Moore be admitted into the firm as a partner. Both proposals were rejected by the plaintiffs. A new part-

nership agreement was not suggested again, and requires no further consideration. The admission of Moore into the firm was defeated by a vote of seven to three, all seven plaintiffs voting against the motion, and the three defendants voting in its favor. The plaintiffs deny any animosity toward Moore, but assert that membership in the firm should be limited to insurance men.

Thereafter Mr. Brown called a special meeting of partners which was held on December 8, 1936, to reconsider the vote taken at the prior meeting, but again the result was the rejection by the same vote of the motion to admit Moore into the partnership. Then, in order to compel his partners to submit to his wishes, the senior partner called another special meeting for the following day for the purpose of acting on a motion to reduce salaries. He introduced at this meeting and had passed a resolution to reduce the plaintiffs' salaries to an unspecified amount. On December 15, 1936, the plaintiffs received checks representing a fifty per centum reduction of the amount of the salaries then due them.

Subsequently Mr. Brown abandoned his intention of coercing his partners, and while the resolution of December 9, 1936, reducing salaries has not been formally rescinded, checks in the full amount of their salaries were delivered shortly thereafter to plaintiffs, and on each due date since that time they were given checks for all salary due. However, the plaintiffs refused to attend any meetings of the firm subsequent to December 9, 1936, upon the ground that Mr. Brown's conduct had breached the partnership agreement.

The present bill was filed by plaintiffs thereafter, praying for a decree of dissolution of the partnership, and that they be granted the right to continue the business under the name of Henry W. Brown & Co. until the expiration date of the partnership agreement. The court below after hearing reached the conclusion that the defendants had wilfully and persistently violated the partnership agreement and had so conducted themselves

that it was not reasonably practicable to carry on the business in partnership with them. It entered an order dissolving the partnership, enjoining the three defendants from interfering with its affairs and decreeing that plaintiffs should continue the business during the remainder of the partnership period under the name of Henry W. Brown & Co.

As we review the record, we must determine whether the evidence supports the findings made by the chancellor, and whether his inferences therefrom justify the drastic decree of dissolution which has been entered in this case. The gravamen of the plaintiffs' complaint is that Henry I. Brown, Sr., by endeavoring first to persuade and subsequently to coerce them into accepting Moore as a partner so affected the harmonious operation of the business that its continuance as now constituted is not feasible from a partnership standpoint. The plaintiffs argue that the measures of compulsion adopted by Mr. Brown in furtherance of his purpose to force Moore as a partner upon them was misconduct of such character as to operate as a repudiation and cancellation of the agreement.

There seems to be no question that the senior partner did endeavor to compel obedience to his wishes by his copartners, and while his conduct undoubtedly was improper and of a character meriting condemnation, the record is nevertheless devoid of any evidence of acts or threatened acts on his part which would cause serious or permanent injury to the partnership business. The increasing profits clearly indicate that the partnership has not materially suffered. Indeed it is undisputed that by permitting his undrawn profits to be used by the partnership for working capital and "good will" purposes Mr. Brown has contributed toward the prosperity of the business far beyond his duties as a partner.

Few, if any, reasons upon which ordinarily the dissolution of a partnership will be decreed are present in this case. There is neither allegation nor proof of

fraudulent or dishonest practices and conduct upon which a dissolution would be granted. While it is well settled, as we said in *Herman v. Pepper,* 311 Pa. 104 (p. 108) : that "the exclusion of one partner by another from the management of the partnership business or possession of the partnership property is undoubtedly ground for dissolution by a court of equity," we are of opinion that the plaintiffs have failed to show that they were denied their proper share of participation in the management of the business. The rights of the partners among themselves are regulated by the articles of partnership. Where, as in this case, the partnership articles provide for the vesting of exclusive control in one partner such stipulation will be strictly enforced: *Peacock v. Cummings,* 46 Pa. 434; *Nick v. Craig,* 301 Pa. 50. See also *Markle v. Wilbur,* 200 Pa. 457. If the plaintiffs are aggrieved because they are unable to exercise the direction over partnership affairs that they feel is their due, the reason is to be found primarily in the partnership agreement of October 12, 1934, rather than because of any misconduct of Mr. Brown.

The ill-advised and almost immediately abandoned attempt to reduce the salaries of the plaintiffs does not, in our opinion, under the particular circumstances, constitute such gross misconduct on the part of Brown, Sr., and the two partners who supported him, as to require their expulsion from the business. It is not apparent from the evidence that the occurrence has in any way interfered with the success of the partnership. The contention of the plaintiffs that the continuance of the partnership with the defendants is impractical is so manifestly inconsistent with the success of the business that the absence of merit therein is obvious. Differences and discord should be settled by the partners themselves by the application of mutual forbearance rather than by bills in equity for dissolution. Equity is not a referee of partnership quarrels. A going and prosperous business will not be dissolved merely because of friction

among the partners; it will not interfere to determine which contending faction is more at fault.

Moreover, we are not convinced that plaintiffs have shown such an absence of blame on their part as entitles them to equitable relief. It would appear that they were willing to pick up the gauntlet of partnership conflict and to seize upon incidents, constituting at their gravest import mere technical misconduct of a partner, for the purpose of acquiring as their own a long established and valuable business to the exclusion of the partner who is the owner of the major interest therein.

From our review of the case it follows that the Act of March 26, 1915, P. L. 18, Section 32, subsections (c) and (d) thereof, has no application here. This section provides that whenever "(c) A partner has been guilty of such conduct as tends to affect prejudicially the carrying on of the business," and "(d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him," dissolution will be decreed. The facts here negative the existence of such a state of affairs as makes applicable the provisions of this section of the act, although it is apparent that the present proceeding was founded upon this section.

The case is ruled by the principle as stated in Story On Partnership, Section 287, where it is said: "It is proper to observe that it is not for every trivial departure from duty or violation of the articles of partnership, or for every trifling fault or misconduct that courts of equity will interfere and decree a dissolution." See *Jacob C. Slemmer's Appeal,* 58 Pa. 168; *Gerard v. Gateau,* 84 Ill. 121; *Young v. McKenney,* 247 S. W. 964 (Ky.); *Josephthal v. Gold,* 171 N. Y. Supp. 1041; *Allen v. Vanderford,* 84 Okla. 127 (202 Pac. 786); *Goodman v. Whitcomb,* 1 Jac. & W. 589, 37 Reprint, 492; 47 Corpus Juris, 1120, Section 787.

After careful examination of the record we find that the evidence does not sustain the conclusions reached by the court below. The chancellor's deductions or inferences made from the facts which he has found are erroneous and cannot stand. As was said in *Pennsylvania Knitting Mills v. Bayard*, 287 Pa. 216, 219: "While it is true that a chancellor's findings of fact, supported by evidence, have the force of a jury's verdict, it is likewise true that, where there is no evidence to support them, or the finding is based on an inference erroneously taken, they will not stand: *Worrall's App.*, 110 Pa. 349, 362; *Bergner v. Bergner*, 219 Pa. 113, 116; *McConville v. Ingham*, 268 Pa. 507, 519; *Hamilton v. Fay*, 283 Pa. 175, 179." See also *Blue Ridge Metal Mfg. Co. v. Proctor*, 327 Pa. 424.

In the light of our decision that the acts of Henry I. Brown, Sr., did not justify the decree of dissolution, it is unnecessary to discuss separately the charges against the defendants Henry I. Brown, Jr., and Henry R. Ruhl, and likewise, since the decree of dissolution was in error, we need not consider whether it was proper to order that plaintiffs continue the partnership business for the balance of the term under the firm name.

The assignments of error are sustained; the decree of the court below is reversed, and it is ordered that the bill be dismissed. Appellees to pay the costs.