227 P.2d 385

**CHURCH et al. v. COLLIER et al.**

**No. 5348.**

Supreme Court of Arizona.

Decided Feb. 13, 1951.

354

D. Kelly Turner, Phoenix, for appellants.

Leslie C. Hardy, Phoenix, for appellees.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Maricopa County reversing a decision of the Employment Security Commission of the state requiring the Western Greyhound Kennel Club of Phoenix and the Tucson Greyhound Club of Tucson to make unemployment compensation contributions to the commission on all wages paid by them during the year 1944.

The Employment Security Commission was created under the provisions of the Employment Security Act, sections 56–1001 to 56–1014j inclusive, A.C.A.1939 (1949 Cum.Pocket Supp.) and is therein vested with power to hear and determine the questions involved herein.

The facts are that the Western Greyhound Kennel Club and the Tucson Greyhound Club are copartnerships engaged in dog racing in Phoenix and Tucson respectively. The names of the partners and their respective interests in such partnerships are as follows:

### Western Greyhound Kennel Club

| Name | Interest |
| --- | --- |
| David K. Funk | 1/5 |
| Art Funk | 1/5 |
| William Collier | 1/5 |
| Kenneth Hagen | 1/10 |
| William B. Winters | 1/5 |
| Garwood Johns | 1/10 |

### Tucson Greyhound Club

| Name | Interest |
| --- | --- |
| David K. Funk | 1/5 |
| Art Funk | 1/5 |
| William Collier | 1/5 |
| Kenneth Hagen | 1/5 |
| Joe B. McCormick, Jr. | 1/5 |

In April 1945 pursuant to due notice given all interested parties and in accordance with the provisions of section 56–1011b of the Act a hearing was held by the Employment Security Commission to determine whether the above named partnerships had sufficient employment under the Act to make either or both of them liable for the payment of unemployment compensation contributions for 1944 and whether their operations fall within the provisions of section 56–1002h(4), now 56–1002g(d), thereof. A decision adverse to both partnerships was handed down by the commission on October 7, 1946, declaring their combined operations to fall within the provisions of said Act.

Within the time prescribed by statute the cause was taken to the superior court for review under the provisions of section 56–1011n. The case was submitted to the court upon the record made before the commission. The court then being fully advised in the premises, reversed the decision of the commission upon the ground that the commission had exceeded its statutory authority (1) in holding that the two partnership employing units constituted a single employer, and (2) by combining the employment experience of the Western Greyhound Kennel Club with the services performed by one Duplessis under a written contract he had with the partnership to build a "rabbit rail" at an agreed price.

The pertinent sections of the Act are as follows: "56–1002f. Definition—(Employing unit).—As used in this act, unless the context otherwise requires 'employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor of any of the foregoing, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had one or more individuals performing services for it within this state."

Section 56–1002g "(a) Any employing unit which, prior to January 1, 1941, was an employer as defined by this law prior to that date, or which, subsequent to December 31, 1940, for some portion of a day, but not necessarily simultaneously, in each of twenty (20) different calendar weeks, whether or not such weeks are or were

consecutive, within either the current or the preceding calendar year (and for the purpose of this definition if any week includes both December 31 and January 1, the days up to January 1 shall be deemed one calendar week and the days beginning January 1 another such week), has or had in employment, three (3) or more individuals (irrespective of whether the same individuals are or were employed in each such day)."

Section 56-1002g "(d) Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, or which owns or controls (by legally enforceable means or otherwise) one or more other employing units, and which if treated as a single unit with such employing units or interests, or both, would be an employer under paragraph (a) of this section".

While appellants have presented a number of assignments of error there are but two issues for the court to determine. First, are the facts in this case such as to bring the operations of the appellee partnerships within the provisions of section 56-1002g(d) of the Act and if not, do the facts justify the court's conclusion of law that Duplessis was an independent contractor while engaged in the construction of the "rabbit rail" for the Western Greyhound Kennel Club?

A determination of the first question may obviate the necessity of considering the second. Section 56-1011n provides for a judicial review of the decision of the commission and subsection 7 thereof specifically sets up the grounds upon which the superior court may reverse or modify the decision of the commission. Subsection 7 reads as follows:

"(7) The court may affirm the decision of the commission or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because of the administrative findings, interferences, conclusions, or decisions are:

"(A) In violation of constitutional provision; or

"(B) In excess of the statutory authority or jurisdiction of the commission; or

"(C) Made upon unlawful procedures; or

"(D) Affected by other error of law; or

"(E) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

"(F) Arbitrary or capricious."

For some reason which we are unable to comprehend, the trial court reversed the decision of the commission upon the ground that it exceeded its statutory authority. The commission, under the law creating it, is a quasi-judicial body em-

powered to hear evidence and upon that evidence to render judgment which may be affirmed by the superior court or it may be reversed, remanded or modified for the reasons above mentioned.

█ The commission may have erred in its conclusions of law or decision but it certainly did not exceed its statutory authority. Section 56–1011i gives to the commission power to administer oaths; section 1011j empowers it to issue subpoenas and through the aid of the superior court to require witnesses to attend upon its hearings; section 56–1011m empowers it to give notice of hearings which it proposes to hold, to hear evidence, to take notice of judicially cognizable facts and to render decisions and issue orders which become final in the absence of a petition for review within the time provided by statute. Section 56–1011b, authorized the commission to conduct the hearing in the instant case. The holding of the court and the reversal of the decision of the commission upon the ground that it exceeded its statutory authority was clearly error.

We might very well rest our opinion upon this, as appellant has assigned error upon this point. Nowhere in the conclusions of law or the judgment of the court is there anything to indicate that the findings, conclusions and decision of the commission are not supported by substantial evidence. However, because of its importance to the commission in the administration of the Act, we will proceed to a consideration of whether section 56–1002h (d) applies in cases of this character and whether the evidence reasonably supports the decision of the commission.

█ Let us see what the evidence discloses. First, four of the copartners own 70% of the Western Greyhound Kennel Club. The same four copartners own 80% of the Tucson Greyhound Club. Second, the business of each of the partnerships according to the finding of both the commission and the court, is conducted, not by any one of the copartners nor by any agent or manager appointed by them, but it is conducted by all of the copartners. This is the ordinary method of conducting the business of a copartnership. As a general rule, partnerships are legally under the control of a majority of the partners. Texas Unemployment Compensation Comm. v. Bass, 137 Tex. 1, 151 S.W.2d 567. It is a fundamental principle of partnership law that all partners have equal rights in the conduct and management of the firm's business unless the contract of partnership provides otherwise. 40 Am. Jur., Partnership, Sec. 15; Potter v. Brown, 328 Pa. 554, 195 A. 901, 118 A.L.R. 1415; Herman v. Pepper, 311 Pa. 104, 166 A. 587. Partnerships act by a majority of the partners in case of a diversity of opinion regarding their internal affairs. 40 Am.Jur., Partnerships, Sec. 116; Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169; Reirden v. Stephenson, Wright & Valley, 87 Vt. 430, 89 A. 465.

■ Under the finding of the court and the commission the control of the two partnerships was lodged in the same four members who own 70% of Western Greyhound Kennel Club and 80% of Tucson Greyhound Club because these four members constituted a majority in each of the copartnerships. Under the language used in our statute to the effect that if the employing unit together with one or more other employing units is "owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interests, * * *" it is not necessary that both the ownership and control should reside in the same personnel. It is enough that either ownerhip or control is vested therein. Clearly the control of both partnerships is by the same interest which fully satisfies the statute. The cases cited by appellee for the most part, are not in point. We expressly decline to follow the rule laid down in Illinois in the case of McGrew Paint & Asphalt Co. v. Murphy, 387 Ill. 241, 56 N.E.2d 416, 418, 158 A.L.R. 1229, wherein it was held the term "owned or controlled" should read "owned and controlled." The term "owned or controlled" in our statute is clear and unambiguous. It harmonizes with all other portions of the Act. Unambiguous language in a statute furnishes no room for construction. Industrial Commission v. Price, 37 Ariz. 245, 292 P. 1099. If this be true certainly the court is without authority to change the language used by the legislature where it is unambiguous.

Many of the statutes upon which appellees rely are not like our own. For instance in the Oklahoma cases cited by appellee the statute there provides merely that the control must be a direct control whereas our statute provides that if it is direct or indirect it is sufficient. Counsel asserts that the portion of this section of the statute reading "(by legally enforceable means or otherwise)" is unintelligible, that "otherwise" does not mean anything. The court in the case of Godsol v. Michigan Unemployment Compensation Commission, 302 Mich. 652, 5 N.W.2d 519, 142 A. L.R. 910, in construing the same language said that the term "or otherwise" means that the control exercised does not have to be legally enforceable. It is sufficient if there is actual control. In that particular case Godsol operated a business of his own and also controlled the separate business of his wife in which he had no interest. It might not have been possible to enforce the husband's right to control the business of his wife but the court said the fact that he did actually control the business was entirely sufficient and brought it within the provision "or otherwise," of the Act.

■ We expressly hold that the fact that two of the partners in the Western Greyhound Kennel Club did not own any interest in the Tucson Greyhound Club and one of the partners in the Tucson Greyhound Club did not own any interest in the Western Greyhound Kennel Club does not alter the legal situation at all. The fact

that the two partnerships are controlled by the four partners who constitute a majority in both partnerships is determinative of the issue. It follows that the two partnerships under the evidence constitute a single employment unit and are therefore subject to the provisions of the Employment Security Act requiring unemployment compensation contributions.

Having reached this conclusion it is unnecessary to consider the question of whether Duplessis was or was not an independent contractor in constructing the rabbit rail for the Western Greyhound Kennel Club.

Judgment reversed.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.