Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee, *v.* Churchill Valley Country Club, Appellant.

Argued March 6, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*John F. McGinty*, with him *Smiley and McGinty*, for appellant.

*Charles G. Hasson*, Assistant Attorney General, with him *Sydney Reuben*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for appellee.

OPINION BY JUDGE MENCER, June 3, 1975:

This is an appeal by intervenor, Churchill Valley Country Club (employer), from an order of the Unemployment Compensation Board of Review (Board) which sustained and adopted the decision of a referee holding that the amount labeled "tips" received by Maria Kominko (claimant) from her employer should be included as wages in computing the amount of benefits to which claimant was entitled.[1]

After a hearing, the referee made the following findings:

> "1. The claimant was last employed as a waitress at $2.95 an hour by Fox Chapel Country Club with her last day of work being October 13, 1973 at which time she had a valid separation.

---

1. There seems to be no issue relative to the conclusion that claimant is entitled to some benefits on the herein stated facts.

"2. The claimant filed an application for benefits with an effective date of October 14, 1973 thereby establishing a base year consisting of the third and fourth quarters of 1972 and the first and second quarters of 1973.

"3. During the claimant's base year she was employed as a waitress by Churchill Valley Country Club and by Pittsburgh Field Club.

"4. While working at the Churchill Valley Country Club the claimant worked banquets and dinners and a gratuity charge was added to the bill. When serving patrons individually she was required, under penalty of discharge, to turn any tips received over to the employer.

"5. The claimant would receive a portion of the tips charged and turned in, based upon a formula unknown to her although her pay stubs indicated her base pay, an amount allowed for meals and an item marked 'tips.'

"6. During the claimant's base year she received the following amounts from Churchill Valley Country Club and the Pittsburgh Field Club.

| "Churchill Valley | 3rd Quarter 1972 | 4th Quarter 1972 | 1st Quarter 1973 | 2nd Quarter 1973 | Total |
|---|---|---|---|---|---|
| Regular Wages | 447.50 | 442.50 | 395.50 | 248.00 | 1573.50 |
| Meals | 130.00 | 118.00 | 100.00 | 62.00 | 410.00 |
| Tips | 1408.85 | 1212.70 | 1028.20 | 616.40 | 4266.65 |
| Pittsburgh Field | | | | | |
| Regular Wages | | | | 434.00 | 434.00 |
| | $2026.35 | $1773.20 | $1523.70 | $1360.40 | $6683.65 |

"7. The claimant was issued a Notice of Financial Determination dated October 25, 1973 indicating that she had high quarter earnings of $744.00 which apparently was arrived at by combining the regular wages

and meals from Churchill and regular wages from Pittsburgh Field Club, and being eligible for a weekly rate of $32.00 with a total amount of $960.00."

Although the employer does not expressly contest the referee's findings of fact, there is some conflict between the evidence as presented in the employer's brief and the facts as found by the referee. After carefully considering our scope of review and the entire record before us, we find that the referee's factual findings (which were adopted by the Board) are supported by the evidence in the record. *See Shira v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 457, 310 A.2d 708 (1973).

We now turn our attention to the legal issue of whether or not the definition of "wages" found in Subsection (x) of Section 4 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §753(x) (Supp. 1974-75), includes those amounts represented by member and guest gratuities or tips of which a club or restaurant employer takes custody and which it redistributes to the service employees.[2] This appears to be a question of first impression in the Commonwealth and there is a dearth of legal opinion construing similar statutory provisions in other jurisdictions.

The pertinent part of Subsection (x) provides:

" 'Wages' means all remuneration (including the cash value of mediums of payment other than cash), *paid by an employer to an individual with respect to his employment* except that the term 'wages' for the purpose of paying contributions shall not include. . . ." (Emphasis added.)[3]

---

2. A resolution of this issue will then naturally resolve the primary issue of computation of benefits under Section 404 of the Act, 43 P.S. §804.

3. None of the exceptions to this subsection are relevant to our discussion here.

434

The test for what constitutes "wages" necessitates our making a two-fold analysis of this statutory provision.

Naturally enough, the term "all remuneration," standing alone, is sufficiently broad to include tips received by a waitress regardless of the manner of collection or disbursement. It would be difficult to perceive other words that the General Assembly could have used to make it clearer that the term "wages" is to be construed in the broadest possible manner; therefore, we must so construe it.[4]

Of course, the statute naturally limits the term "wages" to only such remuneration as is "paid by an employer to an individual with respect to his employment." In essence then, our decision limits itself to whether the tips were in fact paid by the employer or whether the employer was merely an administrative conduit or "constructive trustee" through which the tips proceeded during their trip from a customer to the waitress. Some authorities have certain tests or standards to be consulted in making this or similar decisions.

Federal law[5] seems to distinguish gratuities on the basis of the degree to which they are "accounted for" by the employer and, alternatively, on the difference between a service charge and a true tip.[6] Though this methodology may be helpful in our deliberations, we need not consider it controlling under our act and we find that it is not a precise statement of Pennsylvania law.

The Pennsylvania Bureau of Employment Security has no codified regulations on this matter. Though the

---

4. 1 Pa. C.S. §1921.

5. *See* the Federal Insurance Contributions Act, Int. Rev. Code of 1954, §3101 et seq., and the Social Security Act, 42 U.S.C. §301 et seq.

6. *See Restaurants and Patisseries Longchamps, Inc. v. Pedrick*, 52 F. Supp. 174 (S.D.N.Y. 1943); Rev. Rul. 28, 1969-1 Cum. Bull. 270; Rev. Rul. 74, 1966-1 Cum. Bull. 229; Rev. Rul. 397, 1957-2 Cum. Bull. 628.

Bureau and the Board have on occasion differed in their interpretations, they have in fact followed a set rule.[7] This rule is set forth in the Bureau Manual of Policy Decisions at Paragraph 1130 which can be found in 1B CCH Unempl. Ins. Rep., Pa., ¶1230.1. In essence, it provides that tips are not to be considered as wages, whether or not accounted for to the employer, except in those cases where the employer *requires* reporting and submission to him of *all* tips received by his employees for the purpose of dividing the total amount of tips *equally* among *all* his employees. This statement, though somewhat persuasive, is too restrictive and is not binding on this Court.[8]

We do, however, embrace an interpretation that, under the benefit computation provisions of the Unemployment Compensation Law, gratuities or tips cannot be considered as wages when they pass directly from a patron to a claimant or when the employer is merely a direct funnel for such tips or gratuities from a patron to a claimant.[9] When, however, the tip is in actuality a service charge of

---

7. For decisions where tips were not held to constitute wages see *Appeal of Judith Ann Myers* (Board Decision No. B-69-5-B-103) and Board Decision No. B-15464 of March 30, 1948. For decisions where tips were held to constitute wages see *Claim of Eleanor R. Russo* (Appeal No. 71-8-I-34) and *Claim of Mary Louise Rapacchietta* (Appeal No. B-70-7-L-188; Decision No. B-109455). Interestingly, these latter two cases involved, as the employer, Churchill Valley County Club, the present appellant.

8. We have been unable to determine whether this rule has been applied to the employer contributions part of the Act (Section 301, 43 P.S. §781) or to the benefit determination parts of the Act (Section 404, 43 P.S. §804). Though we need not here decide on an interpretation of "wages" under the employer contribution provisions of the Act, we do note that the statutory definition of "wages" in Section 4(x) does apply to both Sections 301 and 404.

9. An example of the direct funnel method would occur when a patron charges his gratuity to his bill and the employee must wait until the bill is subsequently paid to receive that tip.

the employer, or when an employer exercises significant control over the administration of the tip, thereby preventing a claimant from receiving all that she or he was in fact tipped, such gratuities must be included in a claimant's computation of wages for benefits.[10]

Applying this rule to the facts as found by the referee and as adopted by the Board, we discover that the referee and the Board have in essence correctly applied the law and we must therefore affirm.

This employer has gone too far in its exercise of control. The referee's opinion correctly makes the following analysis:

"Section 4(x) of the Law provides that "Wages, means all remuneration (including the cost value of medium of payment other than cash) paid by the employer to an individual with respect to his employment. It has generally been held that tips received for services rendered shall not be considered as wages and therefore, not used to compute the amount of benefits due. The rationale of the decisions was on the basis that tips are paid to an individual and there would be no method of accurately accounting for the same. That logic is not applicable here since the amount of tips can be accurately computed in view of the fact that the employer collects a gratuity on banquets and dinners and the claimant was required to turn all individual tips over to the employer. It is also acknowledged that the individual does not receive from the employer, the amount of tips that were turned into the employer.

"The employer takes the position that the procedure was established by the employees, however, this claimant had no right to determine whether or not she

---

10. Of course deductions, if any, for social security or any other taxes or reasonable charges may rightfully prevent a claimant's receiving "exactly" what was tipped without converting such moneys into "wages."

would rather be paid as such or to retain her own tips. It should be remembered that if she failed to turn over her individual tips she would have been discharged."

We should note that three facts are determinative of our decision: (1) the fact of discharge if claimant had personally kept her own tips, (2) the redistribution of the gratuities to other employees, and (3) the complete lack of control of claimant over the disposition of the tip moneys. Clearly, under the facts as found by the referee and the Board, it is the employer, not the patron, who pays the employee the moneys. Instead of the employer's being a mere conduit for the tips, we here have employees who are mere conduits for what is actually a service charge.

Finally, the employer argues that a decision such as we make today would discriminate against its efforts to provide a convenient method to distribute tips. We view the problem not as one of convenience but one of results. What is significant here is that the method of distributing tips used by this employer supplements the pay to all of the employees but does not increase their unemployment benefits in cases of discharge.[11]

Therefore, we issue the following

## ORDER

AND NOW, this 3rd day of June, 1975, the June 26, 1974 order of the Unemployment Compensation Board of Review, relative to the claim of Maria Kominko, is affirmed.

---

11. Our decision, of course, will not affect the common situation where a waitress might wish to voluntarily share her tips with busboys or kitchen help and thereby indirectly increase their respective incomes.