589 P.2d 446

Elizabeth S. DEARING, Petitioner,
Appellee,

v.

ARIZONA DEPARTMENT OF ECONOM-
IC SECURITY, and John L. Huerta, Di-
rector of the Arizona Department of
Economic Security, Respondents, Appel-
lants.

No. 2 CA–CIV 2866.

Court of Appeals of Arizona,
Division 2.

Oct. 11, 1978.

Rehearing Denied Nov. 22, 1978.

Review Denied Dec. 19, 1978.

McCarthy & Sandman by Cary Sandman, Tucson, for petitioner-appellee.

John A. LaSota, Jr., Atty. Gen. by John S. O'Dowd, Asst. Atty. Gen., Tucson, for respondents-appellants.

## OPINION

HOWARD, Judge.

Appellee Elizabeth S. Dearing worked as a waitress during 1975 and 1976. In 1977 she applied for unemployment insurance benefits, but the Department of Economic Security denied her application. Dearing appealed to the superior court which found her eligible for benefits and reversed the Department's decision. We affirm the superior court's judgment.

A.R.S. Sec. 23–771 sets out the terms for eligibility for benefits. Sec. 23–771(6) requires that the unemployed individual

"Has been paid wages for insured work during the individual's base period equal to at least one and one-half times the wages paid to the individual in the calendar quarter of the individual's base period in which such wages were highest, and the individual has been paid wages for insured work in one calendar quarter of the individual's base period equal to at least three hundred seventy-five dollars. . . . "

A.R.S. Sec. 23–622 defines "wages":

"A. 'Wages' means all remuneration for services from whatever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with regulations prescribed by the commission." [1]

Section 23–622(B) lists exclusions from the definition which are not relevant here.

During one of her base period's quarters Dearing earned $306.74, not including the tips she received while working as a waitress. Including the tips, she earned $403.48. The policy of the Department of Economic Security is to exclude tips in determining wages.

Both parties agree that Dearing would be eligible for benefits if tips are included by the definition in Sec. 23–622 in "wages".

A cardinal principle of statutory interpretation is to follow the plain and natural meaning of language to discover what the legislature intended to say. *Mendelsohn v. Superior Court,* 76 Ariz. 163, 261 P.2d 983 (1953); *Parrack v. Ford,* 68 Ariz. 205, 203 P.2d 872 (1949). The key word in the definition of "wages" is "remuneration". A survey of various definitions of "remuneration" indicates that it has a broad meaning. Webster's New World Dictionary of the American Language, Encyclopedic Edition (1951) defines "remuneration" as "1. a remunerating. 2. that which remunerates; reward; pay; recompense; compensation." "Remunerate" is "to give or pay (a person) something for some work or service done, loss incurred, etc.; reward; recompense . . . ." Webster's Third New International Dictionary (17th Ed., 1976) defines "remuneration" as "1: an act

---

1. This definition of "wages" is applicable to the part of the Act which covers contributions as well as the part which covers benefits.

or fact of remunerating 2: something that remunerates" and "remunerate" as "1: to pay an equivalent for (as a service, loss, expense) 2: to pay an equivalent to (a person) for a service, loss, or expense". Under the definition for "pay" this dictionary compares "pay" with some of its synonyms: "REMUNERATE, generally more formal than PAY, is applicable to rewards generous, not contracted for, or unexpected . . . ." This dictionary also defines "tip" as "a gift or a usu. small sum of money tendered in payment or often in excess of prescribed or suitable payment for a service performed or anticipated."

■ The definition of "tip" recognizes that it can be either a payment in exchange for a service or an unexpected reward for a service. Both of these aspects of a tip are included in the definitions for "remuneration". "Remuneration" does not require an obligation or a set, contracted amount.

■ By the plain and natural meaning of A.R.S. Sec. 23–622, the legislature apparently intends to include voluntary payments. Further, the unambiguous intention of the legislature in saying "from whatever source" is to include within "wages" payments from sources other than the employer.

Our conclusion that tips are included in the plain meaning of the definition of "wages" is reinforced by past constructions of the Employment Security Act. The Arizona Supreme Court has held that the words defined in the Act, such as "employer", "employment" and "wages", are used as broad terms of description, indicative of the legislative intent to give a wide and liberal effect to the Act's goal of alleviating unemployment. *Gaskin v. Wayland,* 61 Ariz. 291, 148 P.2d 590 (1944). As such, they have a much broader meaning than when they are used by the majority of the states in their unemployment acts and in the Federal Unemployment Tax Act, 26 U.S.C. Sec. 3301, et seq., which follow the common law definitions. *Arizona Department of Economic Security v. Little,* 24 Ariz.App. 480, 539 P.2d 954 (1975). In each case in which the Supreme Court has been

called upon to consider Sec. 23–622, it has decided that the contested payments were wages. *Beaman v. Westward Ho Hotel Company,* 89 Ariz. 1, 357 P.2d 327 (1960) (service charges are wages); *McClain v. Church,* 72 Ariz. 354, 236 P.2d 44 (1951) (real estate commissions are wages); *Sisk v. Arizona Ice & Cold Storage Co.,* 60 Ariz. 496, 141 P.2d 395 (1943) (deliverymen's profits are wages).

*Beaman v. Westward Ho Hotel, supra,* is the most recent judicial consideration of the scope of Sec. 23–622. There the court specifically declined to decide whether tips are included in the statutory definition of wages. It discussed the degree of employer control over the service charges, but this discussion was aimed at distinguishing the service charges from customary tips; it was not part of the court's analysis in finding that the service charges were "wages". Here we are faced squarely with the question avoided in *Beaman,* and the attributes of the service charges there which distinguished them from tips have no relevance. In holding that the service charges were wages, the court noted that the legislation is remedial, that it is to be given a liberal construction, and that "while the payments seem in many ways unlike classic 'wages', they are nevertheless surely 'remuneration for employment' . . . ." 89 Ariz. at 6, 357 P.2d at 330.

Our conclusion is also supported by, and promotes, the legislative goals of the Economic Security Act. Sec. 23–601 instructs:

"As a guide to the interpretation and application of this chapter, the public policy of this state is declared to be as follows:

Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social securi-

ty requires protection against this greatest hazard of economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

When Dearing began working as a waitress, her employer paid her a salary of $1.25 an hour. The salary decreased until she was working only for tips. Clearly these tips were not windfalls. They were a significant part of her income which she depended on and worked for. It is doubtful that Dearing would have agreed to work for such a salary if her employer had not let her keep her tips. There was nothing in the nature of the work Dearing did or the way she was compensated to take her outside of the legislature's concern for alleviating the consequences of unemployment.

Prior to 1947, the Employment Security Act defined "wages" as follows:

"(n) 'Wages' means all remuneration for services from whatever source including commissions and bonuses and the cash value of all remuneration in any medium other than cash. Gratuities customarily received by an individual in the course of his work from persons other than his employing unit shall be treated as wages received from his employing unit. The reasonable cash value of remuneration in any medium other than cash, and the reasonable amount of gratuities, shall be estimated and determined in accordance with rules prescribed by the commission; provided that the term 'wages' shall not include:

(1) . . . ."

§ 56–1002(n), A.C.A.1939.

All reference to gratuities was deleted by the 1947 amendment of the Act. Since then, the Department of Economic Security has construed the definition as excluding tips.

■ Appellants argue that from the legislative history, from the long-standing administrative interpretation, and from the legislature's silence as to the administrative interpretation, the proper construction of Sec. 23–622 excludes tips. The response to each of these arguments is that a court is not free to construe a statute unless it is ambiguous. *City of Mesa v. Killingsworth,* 96 Ariz. 290, 394 P.2d 410 (1964). When a statute is clear and unambiguous, a court is not permitted to go outside the language of the statute for interpretation. *Ross v. Industrial Commission,* 112 Ariz. 253, 540 P.2d 1234 (1975); *Church v. Collier,* 71 Ariz. 353, 227 P.2d 385 (1951).

■ The legislature defined "wages" to include earnings in a wide variety of forms. As has been shown, one only needs to refer to a dictionary to find that voluntary payments made by a customer are unambiguously included in the phrase "remuneration . . . from whatever source". There is no ambiguity in the definition to require us to look beyond the statute for its meaning. Appellants' arguments, if anything, create ambiguity, but they should not be allowed to confuse the present expression of the legislature's intent.

As an additional point in appellee's favor, in the Senate Journal for 1947 the amendment of Sec. 23–622 is repeatedly called a "clarification of employment security law". See Journal of the Senate of the State of Arizona, Eighteenth Legislature, 1947, at 201, 396, 464, 468, 498 and 690. This raises the inference that the 1947 amendment was not intended to change any legal rights or obligations.

■ Appellants cite cases where the administrative interpretation of a statute is given great weight by the courts, but in each the court notes that it is not bound by

the administrative interpretation. Courts find administrative interpretations influential where they reinforce their conclusions, *Industrial Commission v. Harbor Insurance Company,* 104 Ariz. 73, 449 P.2d 1 (1968), or where the statute is ambiguous and there is no clearer indication of legislative intent available. *Long v. Dick,* 87 Ariz. 25, 347 P.2d 581 (1959). But a court has the ultimate responsibility for determining which interpretation of a statute is in accord with the legislature's intended meaning.

There is nothing to indicate that the legislature has been aware of the administrative interpretation of this definition. In *Arizona Press Club, Inc. v. Arizona Board of Tax Appeals,* Div. 1, 113 Ariz. 545, 558 P.2d 697 (1976), the court refused to presume that the legislature had acquiesced in the Attorney General's interpretation of a statute when it failed to change the statute after his opinion had been given. The court said: "While it is a principle of statutory construction that the legislature is presumed to be aware of court decisions interpreting the language of the statute, [citation omitted] opinions of the Attorney General raise no such presumption." 113 Ariz. at 548, 558 P.2d at 700.

The cases which discussed Sec. 23–622's predecessor prior to the 1947 amendment focused on the breadth of the definition. *Gaskin v. Wayland, supra; Sisk v. Arizona Ice & Cold Storage Co., supra.* Presuming the legislature was aware of these decisions, the intent behind the 1947 amendment might well have been to eliminate a redundancy. At least, we might presume that these decisions notified the legislature that tips should be explicitly excluded if they were not meant to be included in "wages".

Since the 1947 amendment, the Department of Economic Security has appeared to support the interpretation that it now opposes:

"The Hotel strenuously urges that the deletion of the italicized parts of the statute [the reference to gratuities in the pre-1947 version] indicates a legislative intent to exclude gratuities, or 'tips', from the definition of 'wages'. The Com-

mission just as strenuously insists that the legislature intended no such thing . . . ." *Beaman v. Westward Ho Hotel Company,* 89 Ariz. at 4, 357 P.2d at 329.

Because we should presume the legislature has been aware of *Beaman,* and there is no indication that the legislature has been aware of the Department's practise of excluding tips, it would be illogical to infer from the legislature's silence an approval of the Department's practise.

Appellants cite several cases in which tips are held not to be wages. In each of these cases however the court is dealing with a different, a narrower, definition of "wages". The issue in this case is not the meaning of "wages"; the legislature has answered that question for us. The issue here is the meaning of "all remuneration for services from whatever source." Cases construing other definitions are not applicable.

It is interesting to note that in *Unemployment Compensation Board of Review v. Churchill Valley Country Club,* 19 Pa. Cmwlth. 430, 433, 338 A.2d 738, 740 (1975), where the definition in question was "all remuneration . . . paid by an employer . . ." Unemployment Compensation Law of 1936, Sec. 4(x), 43 Pa.Stat.Ann. Sec. 753(x), the court said:

"Naturally enough, the term 'all remuneration,' standing alone, is sufficiently broad to include tips received by a waitress regardless of the manner of collection or disbursement. It would be difficult to perceive other words that the General Assembly could have used to make it clearer that the term 'wages' is to be construed in the broadest possible manner . . . ."

Finally, despite the fact that they concede that the sole issue here is whether tips are included in the definition of "wages" in Sec. 23–622, appellants argue that even if they are found to be wages, Dearing's tips would not be "wages for insured work" as is required by Sec. 23–771(6).

■ Sec. 23–619 defines "insured work" as "employment for employers". Tracing through the definitions for "employment" and "employer", A.R.S. Secs. 23–613, 614, and 615, and looking at the cases which apply them, it is clear that Dearing received her tips for insured work, even when the employer was paying her nothing directly. Her services were performed in furtherance of the employer's business and he had a wide range of control over the manner in which she performed them. *See Beaman v. Superior Products, Inc.,* 89 Ariz. 119, 358 P.2d 997 (1961); *Southwest Lumber Mills v. Employment Security Commission,* 66 Ariz. 1, 182 P.2d 83 (1947).

■ From the plain meaning of Sec. 23–622, and the broad remedial goal of the legislature, we conclude that Dearing's tips were wages for the purpose of the Employment Security Act.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.